**Emmeline LEWIS, Plaintiff-Appellant,**

v.

**Thomas M. SPENCER et al., Defendants-Appellees.**

**No. 71-1371**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1972.

Rehearing Denied Sept. 12, 1972.

---

* Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

John G. Abbott, Larry Watts, Houston, Tex., for plaintiff-appellant.

Stanley D. Baskin, Pasadena, Tex., B. Jeff Crane, Jr., Houston, Tex., Baskin, Fakes & Stanton, Pasadena, Tex., Vinson, Elkins, Searls & Smith, by Richard J. Trabulsi, Jr., Houston, Tex., for appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant was employed as a full time biology teacher at San Jacinto College, a public junior college of the State of Texas, located near Houston, for three school years, 1966–69, under one year contracts. In the spring of 1969, when both appellant and her husband were teaching in the biology department, the Board of Regents of the college would not rehire her for 1969–70 because of a newly adopted policy of the college that husband and wife could not teach in the same department. Appellant and her husband were the only couple on the faculty caught by the proscription of the new policy at the time it was enacted and put into effect.

Appellant sued the president and the regents under 42 U.S.C. § 1983, seeking a declaratory judgment, an injunction, and damages. On the pleadings, affidavits and depositions the District Court granted summary judgment for the defendants by a memorandum entry stating only that it lacked jurisdiction and that under the undisputed facts appellant was not entitled to relief. We reverse and remand.

Until divorced in January 1968 appellant was married to a man not connected with the college. In June 1968 she married her present husband, who had been a teacher in the biology department since 1967. The two of them continued to teach in the biology department from the fall of 1968 until March 1969, without any question or comment from the college concerning both being in the same department. In March 1969 the president notified appellant that the regents planned to adopt, or to discuss adopting, a policy barring a married couple from teaching in the same department. There is evidence that other colleges and universities have similar policies, some even forbidding any con-

current employment of two spouses in the college or university, whatever their assignments. Some of the undergirding reasons given for such policies are to discourage nepotism and favoritism, prevent emergence of disciplinary problems, inhibit personal and professional cliques in which husband and wife will side with each other, and prevent one spouse's frequently taking the teaching assignment of the other. However, none of these problems which such policies are said to prevent or deter had arisen in the biology department by reason of both Lewises having taught there during the first six months of the 1968–69 school year. There is no contention that either appellant or her husband was not a competent teacher of biology. She had received a number of commendations and professional honors. There is no evidence, or even suggestion, that adoption and application of the new policy related in any manner to appellant's divorce and remarriage other than that her status as a married person brought her within the bar of the policy.

Before his initial discussion with appellant, the president talked with the Lewises' division chairman and was told by him that both Mr. and Mrs. Lewis were competent teachers. The division chairman pointed out that Mr. Lewis was trained in biology only, and, in order that both could remain with the college as teachers, suggested that Mrs. Lewis be transferred to the psychology department, a field in which she had some training though not enough to meet accreditation standards for a full time teacher without taking additional college courses. The possibility of such a transfer was discussed between appellant and the president in their initial conversation.

On April 7 in a meeting at which appellant was not present, and as to which she received no notice and opportunity to be present, the Board of Regents adopted the proposed policy. At the same meeting a resolution was adopted that appellant and her husband were "reelected" to the faculty for the next year, he in the biology department, and she in psychology. Thereafter the president offered appellant a full time teaching position for the next year in the psychology department, conditioned on her agreeing to take additional courses in psychology to meet accreditation standards.[1]

On April 15 appellant wrote the chairman of the Board, acknowledging that the action of the Board "is well taken as a policy making decision within the jurisdiction of the Board and should be enforced from this date," but that the ruling "should not affect the present status of my husband and I as we were married ten months prior to this decision." At the same time she requested a hearing before the Board in order that they better understand her "special situation with regard to the new policy." On April 23 the president wrote her that her request for hearing was granted and that at the meeting of May 5 "you will be given an opportunity to make whatever statements you wish to make."

Appellant appeared at the May 5 meeting with attorneys from the National Education Association. The initial statement in the minutes of the purpose of the meeting is that "[t]he board granted [appellant] a hearing to ask them to reconsider her case." But shortly thereafter they recite that she asked permission to make a tape recording of the meeting and that it was denied because "this meeting was intended only to inform the board of her position in the situation." This is consistent with the statement in the April 23 letter that she could make whatever statements she wished. Appellant was allowed to explain her position at length, including the fact that she objected to what she termed the retroactive application of the

---

1. The record is unclear whether she would have to complete these courses in the summer of 1969. It does appear that she was expected to take at least some of the courses in that summer, and that she already had made commitments for the summer to pursue additional studies in biology.

policy. The final portion of the minutes relating to appellant's matter said:

> The Board explained any time a contract was issued the person was subject to assignment, and that is what they are doing. That how the policies are made should not make any difference except that the Board is acting in good faith. Mr. Ball [a regent] said our College makes policies that no other colleges have in order to hold the standards of our College as high as possible, and to eliminate the problems before they come to our school. Our policies are strictly our own for what we feel is best for us.

> Mr. Slocomb [the chairman] explained the policy is on our books and that the Board has the right to make policies. However, Mrs. Lewis is caught in the middle, and the Board will take this case under advisement, and will contact Mrs. Lewis when a decision has been reached.

> \* \* \* \* \* \*

> The Board took the case under advisement.

No decision was reached at the meeting.

Within a few days the chairman and vice chairman of the Board, with the knowledge and approval of the president, commenced a series of discussions and correspondence with appellant concerning possible arrangements under which she might remain with the college as a teacher. The parties differ in their recollections of these negotiations and the extent of their finality. The officials considered that they were proposing a split teaching assignment, part in biology and part in psychology. Appellant considered that the split assignment was little more than a formality, that she would teach in psychology only to the extent not needed in biology, and she expected the biology department to need her full time. We need not resolve these differences. At a meeting on June 2–3 the Board of Regents declined to accept the recommendation of the chairman and vice chairman that appellant be offered a teaching assignment divided between biology and psychology, and adopted a

resolution that there was no change in the decision of April 7 that she be offered a place in the psychology department.

In the interim, on May 12, appellant had testified before the Texas legislature concerning a proposed teacher tenure bill said not to be favored by the president and the regents, and allegedly in her testimony had made critical reference to the demotion of another teacher at San Jacinto. Her appearance was reported by Houston news media. Also, on May 16, appellant and her husband had participated in organization of a chapter of the National Faculty Association, a branch of the National Education Association. Appellant contends that the president of San Jacinto is opposed to NEA, but the record does not show that he was aware of the participation by appellant and her husband.

After receiving word of the June 2–3 action, appellant wrote the Board asking for reconsideration, offering to appear again before it, and stating that she was appealing its decision. On July 3 the Board notified her to accept the offer of a place in the psychology department by July 7 or it would be withdrawn. Appellant responded by another request for reconsideration and another offer to appear again before the Board. On July 7 the Board withdrew its offer.

On this appeal appellees make a threshold argument that appellant had no constitutional right to teach in the same department as her husband, or in any particular department, and that the body of law concerning discharges from government service have no bearing in a case where a transfer is offered, not timely accepted, and then another person is employed for the position. But "the theory that public employment, which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629, 642 (1966).

Because of the question of whether as a matter of due process the regents were required to grant to appel-

lant an administrative hearing, we have withheld our decision pending determination by the Supreme Court of Perry v. Sindermann and Board of Regents v. Roth, which now have been decided.[2] Mrs. Lewis had neither a contract nor tenure nor the substantial equivalent of tenure as defined by those cases.[3] Also the policy as adopted by the Board was not such as to seriously damage her standing in the community or to impose on her a stigma that foreclosed her freedom to seek other employment, so that she was not entitled, as a matter of due process, under Cafeteria and Restaurant Workers Union, etc. v. McElroy, 367 U. S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), and like cases, to an opportunity in a full hearing to refute the charges. *Roth, supra,* pp. 573–574, 92 S.Ct. 2701.

■ However, another issue remains open, which is the same as was left open in *Perry* by Part I of that decision. On May 12, when Mrs. Lewis appeared before the Texas legislature to discuss tenure legislation, and on May 16, when she and her husband participated in organizing a chapter of NFA, her status was unresolved and still under consideration. Negotiations between her and the chairman and vice chairman of the Board were still in progress.[4] She contends that on June 2–3 the Board receded from the posture of negotiating with her and, in the face of the recommendation of the chairman and vice chairman that she be given a split assignment, returned to its position of April 7, and that it took these actions in retaliation for her exercise of First Amendment rights and her rights of freedom of association As *Perry* points out, 408 U.S. p. 597–598, 92 S.Ct. 2697–2698, lack of contract or ten-

ure is immaterial to this kind of claim. *See also* Keyishian v. Board of Regents, supra; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Mrs. Lewis is entitled to an exploration of this issue by the District Court. *Perry, supra* p. 598, 92 S.Ct. 2698.

The parties have laid great emphasis upon the question of the power of the board to adopt a policy forbidding husband and wife teaching in the same department. By letter, and in her statement to the board on May 5, and in her deposition, Mrs. Lewis correctly acknowledged the validity in general of such a policy. It did not "foreclose[d] [her] freedom to take advantage of other employment opportunities" and "did not involve any regulations to bar [her] from all other public employment in State universities." *Roth, supra,* 408 U.S. pp. 573–574, 92 S.Ct. at p. 2707. The range of opportunities which it foreclosed was a narrow one.

■ In concluding that the policy *vel non* did not violate due process under *Cafeteria and Restaurant Workers* we do not, however, reach another issue which is for the District Court in the first instance. That issue is the possible evidentiary effect that application of the policy to appellant without recognition of her peculiar circumstances may have upon her remaining claim that the board acted in retaliation for her constitutionally protected activities. Restating the matter: when a policy otherwise constitutionally valid does not by its own terms (such as a "grandfather clause" or prospective application) contain a means for recognizing the peculiar interest of the one couple who are caught by its impact, is the application of the

2. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Our disposition of the case makes it unnecessary for us to reach the issue of whether Mrs. Lewis' attendance at the May 5 meeting met due process standards.

3. See also Skidmore v. Shamrock Independent School District, 464 F.2d 605 (5th Cir., 1972).

4. Whether the negotiations carried on with Mrs. Lewis after the meeting of May 5 and prior to the meeting of June 2–3 were specifically authorized or directed by the Board is unclear. However, as we have already pointed out, the negotiations were conducted by the two senior officers of the board and with the knowledge and approval of the president.

**558**

policy—also without recognition of those peculiar interests by an exemption or exception—so undiscriminating and arbitrary that it tends to show the application was in fact for a constitutionally impermissible purpose?

One caveat needs to be stated. The recitals of·fact in our opinion should not be treated on remand as undisputed facts. There is some question as to whether appellant's amended complaint and the attachments thereto were considered by the court when the motion for summary judgment was granted, and if not whether they should have been. Because appellee in its brief treats the issues as though the amended complaint was considered, we have done the same. Under all the circumstances, however, all factual questions relating to the viable legal issue should·be for the District Court to consider afresh on remand.

Reversed and remanded for further proceedings not inconsistent with the opinion.