Owen D. ROANE, Plaintiff-Appellee,

v.

**CALLISBURG INDEPENDENT SCHOOL DISTRICT et al., Defendants-Appellants.**

No. 74–1055.

United States Court of Appeals, Fifth Circuit.

April 18, 1975.

Belvin R. Harris, Gainesville, Tex., Jack G. Kennedy, Professional Corp., James R. Fry, Sherman, Tex., for defendants-appellants.

Frank Hill, Arlington, Tex., for plaintiff-appellee.

Before GEWIN, AINSWORTH and GEE, Circuit Judges.

GEWIN, Circuit Judge:

■ This dispute, involving the right to continued public employment, requires that we give content to the elusive Fourteenth Amendment proscription on denial of "property" without due process of law. The appellee Roane, seeking injunctive relief and damages, initiated this suit against his school board employer pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983. Jurisdiction is based on 28 U.S.C. § 1331.[1] In essence, Roane claims that the school board discharged him in violation of the Fourteenth Amendment when, without a hearing, it refused to permit him to complete his contractual term of employment. We affirm in part and reverse in part.

Due process protections for liberty and property interests, particularly in the educational field, were rejuvenated in the recent Supreme Court decisions of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).[2] In

1. It is not clear whether an "independent school district", organized pursuant to state law for the purpose of operating public schools, should be treated as a "person" for purposes of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its jurisdictional sibling, 28 U.S.C. § 1343. The Supreme Court has ruled, of course, that a municipality may not be held liable under this provision for either damages, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), or equitable relief. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). These decisions leave open the possibility of basing jurisdiction on the general federal jurisdictional statute, 28 U.S.C. § 1331, and this court has found that such a basis may be appropriate. United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799, 803 (5th Cir. 1974); Traylor v. City of Amarillo, 492 F.2d 1156, 1157 n. 2 (5th Cir. 1974). Regardless of whether a school district is treated as a municipality, see, e. g., Love v. City of Dallas, 120 Tex. 351, 40 S.W.2d 20 (1931), or a "person", the record in this case indicates that the plaintiff Roane satisfied the jurisdictional requisites of § 1331. Furthermore, Texas law specifically authorizes suits against school districts. Tex. Educ.Code, § 23.26(a), V.T.C.A.

2. We do not view the Supreme Court's most recent pronouncement in this area, the plurality opinion in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), as undermining the applicability of the Roth-Sindermann duet to this case. Arnett held that federal employees are adequately protected under the Lloyd-LaFollette Act, 5 U.S.C. § 7501 (1970) and thus are not entitled to Fourteenth Amendment due process hearings prior to discharge. Texas law affords no similar protections to school district employees.

those cases, the Court extensively reviewed the types of interests subject to such protection. Most significantly for this case, *Sindermann* held that property interests may include more than mere contractual and statutory rights and that an educational institution can be bound by a "de facto" tenure system if the "policies and practices of the institution" indicate that a teacher may realistically anticipate renewal of his employment contract.[3] *Sindermann* thus provides the logical starting point for our analysis. As in most areas of the law, however, the recognition that a leading case may be relevant does not resolve the dispute. Small variations and nuances of fact may distinguish present cases from established precedent. We turn therefore to a careful scrutiny of the factual background of this dispute.

## I.  *Facts*

The plaintiff Roane, a retired Air Force officer, is a school teacher and administrator. At the time of trial, he held degrees of Bachelor of Education and Master of Education and in addition had almost completed work on a Doctorate of Education. He was first employed by the defendant Callisburg Independent School District in June, 1963 when he became a teacher of mathematics and part-time principal. Two years later he became a full time mathematics teacher. In 1966, he resigned from the defendant school district and taught for a year within another school system. The Callisburg Independent School District rehired him during the summer of 1967, this time as principal of the entire school system. Shortly thereafter, prior to the beginning of the 1967–68 school year, Roane was offered and accepted the position of superintendent of the school

district. In 1968 his contract was renewed for a term of one year and in 1969 and 1970 it was verbally renewed for unspecified periods. He held this position until the school district's board of trustees terminated his services as of June 30, 1971.

Roane and the school board of trustees never entered into a written contract. At the time Roane accepted the position as superintendent, however, hiring procedures were governed by the school district's "Written Rules and Regulations." These provided that

> The Superintendent of schools shall receive as his first contract a term of not less than one year. Thereafter, he shall be elected for a term of from two to five years, at the first regular meeting in January of the year in which his term of office expires. On the first day of July thereafter the term shall begin, continuing for a period of time elected until his successor is elected and qualified.

Both Roane's predecessor and successor were hired in accordance with this policy of granting two year contracts, renewable at the beginning of each year. Evidence adduced at trial suggested that the purpose of this hiring policy was to provide the superintendent with a sense of job security. The written regulations further stated that the superintendent's contract could be terminated upon thirty days notice at the discretion of the school district board of trustees for "failure to abide by policies of the board," "failure to cooperate with the board," and incompetency.

Roane's relationship with his employers apparently began to deteriorate during 1970 after he vocally disagreed with the school board's classroom construction

---

**3.** *Roth* and *Sindermann* dealt specifically with the rights of teachers to continued employment. While there may be some conceptual distinctions between teachers and school administrators because of the need to protect academic freedom in the classroom, the Fourteenth Amendment, as construed under these and similar cases, does not suggest that these distinctions compel differing legal treatment.

So long as a public employee can establish a property or liberty interest in his employment, he is entitled to due process protections, regardless of the nature of his employment. *E. g.,* Sims v. Fox, 505 F.2d 857 (5th Cir. 1974) (en banc); McDowell v. State of Texas, 465 F.2d 1342, 1347 (5th Cir. 1971).

plans. He had recommended the construction of six new classrooms at one site within the district while a majority of the board advocated that two classrooms be built at each of two sites. Two members of the seven-man board supported Roane's position.

While the parties dispute the reasons for the board's action, the board decided late in 1970 to terminate Roane's employment. He learned of the board's intentions and consequently tendered his resignation at the regularly scheduled meeting on January 4, 1971, apparently to avoid the embarrassment of being fired. The secretary recording the events of the meeting took notes in longhand, and recorded only that Roane submitted his resignation. Roane, in his own handwriting, amended these notes by inserting the words "at the end of his present contract (June 30, 1972)" after that portion of the minutes reporting his resignation. The minutes, containing this addendum, were subsequently typed, approved, and signed by the board at the next meeting. One member testified that he noticed that the date of resignation had been added to the motion and therefore declined to sign the minutes.[4]

In May, 1971, after relations between Roane and the board had eroded still further, the board adopted a motion, over Roane's objection, terminating his service on June 30, 1971. He received no hearing prior to this date, but two weeks later the board held a hearing at which it presented Roane with a list of fourteen reasons for his discharge. These reasons consisted primarily of a series of minor administrative deficiencies such as failure to secure needed repairs, delays in replacing school equipment, and unauthorized transfer of students among schools.

Roane first appealed his discharge to the county school board but that body concluded after a hearing that he had no remedy since he had no written contract. He then filed suit in federal district court. The district court concluded that the Callisburg Independent School Board operated under a de facto tenure system by virtue of its employment practices and written regulations and that Roane therefore enjoyed a "property interest" in continued employment through June 30, 1972. The court further determined that, even assuming that the post-discharge hearings satisfied due process, the school board presented no constitutionally permissible grounds for the dismissal. The list of incidents of managerial failures, it concluded, resulted from the board's realization that the difference of opinion over the location of new classrooms was insufficient justification for discharge. The district court accordingly awarded Roane $12,504, the amount of one year's salary, plus $6,000 in attorney's fees and directed an expungement from the board's records of all references to his discharge.

## II. *Property Interest*

That Roane sought a remedy under the Civil Rights Act and the Due Process Clause of the Fourteenth Amendment does not narrow our inquiry to federal constitutional questions. As the Supreme Court suggested in *Roth,* the Due Process Clause cannot operate in a vacuum; it is only activated when there is some substantial liberty or property interest which is deserving of procedural protections. By its terms, it safe-

4. The minutes of the January 4, 1971 meeting contained the following statement:

A motion was made by Mr. Russell, seconded by Mr. Dobbs, to accept the resignation of Mr. Owen Roane as Superintendent of Callisburg Schools. This resignation is to become effective at the end of his present contract, June 30, 1972. The motion carried unanimously.

These minutes were read and approved by the school board at the next meeting, held January 18, 1971. Only one member of the board who signed the January 18 minutes, a Mr. Dobbs, testified at trial that he had not thereby intended to approve the minutes of the January 4 meeting. He stated that he signed these minutes sometime later, not realizing that he was approving the minutes of the January 4 meeting which he considered improperly altered as to the effective date of Roane's resignation.

guards "life, liberty, or property." The gravamen of Roane's task, therefore, is to establish that he possessed a protectible property interest prior to his dismissal.[5] Robinson v. Jefferson County Board of Education, 485 F.2d 1381 (5th Cir. 1973); Skidmore v. Shamrock Ind. School District, 464 F.2d 605 (5th Cir.[*] 1972). Absent some legislative or constitutional provision or some type of contractual or de facto tenure arrangement, the school board enjoys the same power to discharge Roane as it did to hire him.[6] See Harnett v. Ulett, 466 F.2d 113 (8th Cir. 1972).

The Supreme Court in recent years has significantly expanded the number of property interests which are subject to Fourteenth Amendment procedural protection. The legitimate receipt of welfare benefits pursuant to statutory authority, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the continuation of public employment after a grant of tenure, Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956), the right of a college professor or administrator to complete the term of their contracts, Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952), the expectancy of employment of a college teacher who worked under a system of "de facto tenure", Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and a student's legitimate claim of entitlement to public education under state law, Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, (1975), are property interests which may not be infringed without resort to proper procedures.

▇▇ Yet as Roth has established, "the range of interests protected by pro-

cedural due process is not infinite." 408 U.S. 570, 92 S.Ct. at 2705, 33 L.Ed.2d at 556–7. To merit due process protections, a person must have more than an "abstract desire" or even a compelling personal need for the interest in question; he must be able to establish a "legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Thus, the mere failure to rehire an employee without restricting his opportunity to search for other employment does not reach constitutional proportions. Id. at 574, 92 S.Ct. at 2696, 33 L.Ed.2d at 560. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Moreover, the test is necessarily objective. That Roane himself had a unilateral "expectancy" of continued employment is not determinative absent reasonable indicia of a school board policy or understanding. E.g., Sims v. Fox, 505 F.2d 847 (5th Cir. 1974) (en banc); Bradford v. Tarrant County Ind. College District, 492 F.2d 133 (5th Cir. 1974); Zimmer v. Spencer, 485 F.2d 176 (5th Cir. 1973); Skidmore v. Shamrock Ind. School District, supra.

The Constitution itself gives little content to the concept of property. In determining whether Roane enjoyed a protectible property interest, it is therefore necessary to evaluate his claim within the context of Texas law. Pursuant to Roth, we must determine whether existing policies, "rules and understandings" of the school district created an entitlement to continued employment through June 30, 1972.

▇▇ We find that the "common law" of the Callisburg Independent School District, comprised of both written policies and actual practices, gave Roane the equivalent of tenure in his administra-

---

5. We note that in discharging Roane the school board did nothing to impugn his honesty, loyalty or morality and thereby "seriously damage his standing and associations in his community." Board of Regents v. Roth, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558. Cf. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). See also Bradford v. Tarrant County Ind. College District, 492 F.2d 133 (5th Cir. 1974).

6. Texas law now provides for so-called "probationary contracts" for teachers and requires that a hearing be held should the board of trustees wish to terminate a teacher's employment at the end of his current contract period or for cause during the term of his contract. Tex.Educ.Code §§ 13.101–13.116 (1972). These provisions, on their face, apply only to teachers, not school administrators.

tive post through June 30, 1972. Most significantly, the "Written Rules and Regulations, Callisburg Public School Board of Education" in effect during the course of Roane's employment, provided that after the first year, the Superintendent shall be elected for a term of "from two to five years."[7] Evidence adduced at trial indicated that both Roane's predecessor and successor were hired pursuant to this understanding. When the school board renewed Roane's contract in 1970, it gave no indication that it was creating other than a two year contract. Additionally, Roane took steps to amend the minutes of the meeting at which he tendered his resignation to explicitly indicate that he did not intend to relinquish his position prior to June 30, 1972. The minutes as amended were ratified by the board. The confluence of these policies and events supports the conclusion that Roane enjoyed "a legitimate claim of entitlement" to employment for the remainder of a two year term.[8] See, e. g., Perry v. Sindermann, *supra*; Zimmer v. Spencer, *supra*; Hostrop v. Board of Junior College Dist. No. 515, 471 F.2d 488 (7th Cir. 1972), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973).

■ A finding that Roane enjoyed a property right in the nature of de facto tenure in his position does not, of course, unalterably shield him from discharge; it merely insures that he may not be dismissed without "good cause." Perry v. Sindermann, *supra*; Zimmer v. Spencer, *supra*. An opportunity for a hearing, the very cornerstone of due process, is normally required in these circumstances to evaluate whether such cause exists and to permit the employee to challenge the board's reasons for dismissal. The possibility of arbitrary, undocumented

action will not be tolerated when protected rights are at stake.

■■ The determination of a school board, made in accordance with proper procedures and supported by substantial evidence, would normally be entitled to deference by a federal court evaluating a claim of impermissible discharge. Callahan v. Price, 505 F.2d 83 (5th Cir. 1974); Toups v. Authement, 496 F.2d 700 (5th Cir. 1974); Thompson v. Madison County Board of Education, 476 F.2d 676 (5th Cir. 1973). In this case, however, the school board acted without providing Roane a pre-termination hearing and made no adequate findings of fact. The district court did not decide whether the two post-termination hearings satisfied the dictates of the Fourteenth Amendment but concluded that even if they did, the board nevertheless lacked "good cause" for Roane's dismissal. Upon a review of the record we are unable to conclude that this finding was clearly erroneous. Furthermore, we agree that the record suggests that the post-hoc list of administrative deficiencies presented to Roane was an effort to rationalize a decision stemming from differing views on classroom construction. That the school district "Written Rules and Regulations" permit discharge for failure to cooperate and abide by board policy does not mitigate the "good cause" standard or otherwise authorize the denial of protected interests.

### III. *First Amendment Claim*

Roane has claimed throughout this litigation that the fundamental reason for his discharge was not the various managerial oversights on which the school board relied but rather his expressed difference of opinion with the board's class-

---

7. These regulations are entirely local. Texas law specifies the maximum term of office for school superintendents, Tex.Educ.Code § 23.-28 (1972), but is silent as to minimum terms. As the district court suggested, the authority to establish minimum terms is by implication left to the local school district board of trustees.

8. The plaintiff Roane argued at trial and urges on appeal as an alternative ground for affirmance that he had, under Texas law, an implied contract or an oral contract of employment through June 30, 1972. Our conclusion that Roane enjoyed a legitimate claim of entitlement to an additional year of employment precludes the need for evaluating this state law contention.

room construction program. The First Amendment, he contends, bars such retaliatory action against a public employee. The school board counters that Roane may be fired for general "non-cooperation", evidenced in part by his disagreement with the board's program of classroom construction.

■ It is axiomatic that the failure to renew the contract of even a non-tenured public employee may be predicated on his exercise of First Amendment rights only in unusual circumstances. Perry v. Sindermann, *supra,* 408 U.S. at 597, 92 S.Ct. at 2697, 33 L.Ed.2d at 577. *See also* Lewis v. Spencer, 468 F.2d 553 (5th Cir. 1972). Under the Supreme Court's standard in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and its progeny, a state agency may not restrict an employee's freedom of expression by discharge or other means unless that employee's statements are shown to substantially impede the legitimate operation of that agency. *See* Zimmer v. Spencer, *supra.* *See also* Duke v. North Texas State University, 469 F.2d 829 (5th Cir. 1973).

We find it unnecessary to rule on this additional constitutional claim in view of our conclusion that Roane enjoyed a protected property interest in employment through June 30, 1972 and that the school board lacked "good cause" for his discharge. These circumstances alone present a sufficient legal basis for the district court's award of damages for the remainder of Roane's salary.

### IV. *Mitigation of Damages*

■■ The school district contends on appeal that even if it improperly discharged Roane, it is not liable for the full year's salary since he completely failed to mitigate damages by using reasonable diligence to secure other employment. The trial court properly determined that the burden of proving this issue rested on the school district and that the district simply failed to present any evidence in support of its claim.

Both Texas law, Mr. Eddie, Inc. v. Ginsberg, 430 S.W.2d 5 (Tex.Civ.App.1968), and the law of this circuit, Sparks v. Griffin, 5 Cir., 460 F.2d 433, indicate that the employer must establish that the dismissed employee failed to use reasonable diligence in securing new employment. The school district in this case has failed to meet this burden.

### V. *Attorney's Fees*

■ In addition to the damages the district court entered an award of $6,000 in attorney's fees against the defendant. In its findings of fact, that court noted that "this civil action was necessary to bring about compliance with the Fourteenth Amendment . . . and Section 1983 . . . ." While we concur that plaintiff's attorney assisted in the vindication of constitutional and statutory rights, we feel that an award of attorney's fees in this case is improper. As the Supreme Court has recently noted in F. D. Rich Co., Inc. v. Industrial Lumber Co., 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974),[9] federal courts have made but three exceptions to the "American Rule" that such fees are not recoverable in the absence of a statute or contractual provision:

We have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefited class. The lower courts have also applied a rationale for fee shifting based on the premise that the expense of litigation may often be a formidable if not insurmountable obstacle to the private litigation necessary to enforce important public policies [the "private attorney general" rationale]. 417 U.S. at 130, 94 S.Ct. at 2165, 40 L.Ed. 714.

---

**9.** The *Rich* case was decided subsequently to the district court's ruling in the instant case.

The mere fact that the litigation in this case involves issues of civil rights does not in itself justify an award of attorney's fees. The plaintiff sued only in his own behalf and the judgment does not directly benefit any other persons or class. This is not a case in which a damage award was unlikely or in which the costs of proving a case for injunctive relief were disproportionately high. The applicability of § 1983 does not automatically justify an award of attorney's fees to the injured party.

The decision of the district court concerning the school board's liability for the appellee's salary through June 30, 1972 is affirmed. That portion of the district court's award relating to attorney's fees is reversed.

Affirmed in part; reversed in part.