335 So.2d 308 (1976)
SCHOOL BOARD OF LEON COUNTY et al., Appellants,
v.
John S. GOODSON, Appellee.
No. Z-309.
District Court of Appeal of Florida, First District.
June 30, 1976.
Rehearing Denied August 9, 1976.
*309 C. Graham Carothers of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellants.
Robert J. Angerer and LeRoy Collins of Ervin, Varn, Jacobs & Odom, Tallahassee, Elizabeth duFresne, Miami, Charles E. Miner, Jr., Tallahassee, for appellee.
BOYER, Chief Judge.
In its final judgment, the trial court ordered the Leon County School Board to grant appellee, a teacher in the Leon County School System, a fifth year continuing contract which was tantamount to an award of tenure. The case turns on whether the agreement, upon which the trial court based its final judgment, between appellee and the principal of the school at which appellee was employed was binding upon the Leon County School Superintendent and/or School Board.
Appellee, plaintiff in the trial court, asserted in his complaint that appellant School Board had wrongfully denied him a continuing contract in the 1974-75 school term. The record indicates that appellee taught for four years in Leon County, at Raa Middle School for the school years 1970-71 and 1971-72, and at Godby where he taught ninth grade Science in 1972-73 and 1973-74. In March of 1973, appellee received a memorandum signed by his principal (Mr. Coley), assistant principal John Lawrence, another assistant principal and the Chairman of the Science Department. *310 The memorandum listed eight specific areas of improvement and was prefaced with the statement, "the following improvements must be observed in order to grant the priviledge [sic] of tenure in the Spring of 1974." The next day, appellee delivered a signed memorandum to the principal in which he stated, "I hereby agree to waive my continuing contract for my fourth year of teaching in the Leon County School System, and agree to abide by, and be evaluated on the basis of the conditions set down in the adjoining memorandum." By letter, Mr. Coley advised Leon County Superintendent of Schools, Dr. Lovell, of the agreement and attached copies of the two memoranda to the letter. Appellee was subsequently reemployed for the following school year (1973-74) and in June signed a standard form annual contract.
Principal Coley resigned his position and was replaced by Assistant Principal Lawrence. On March 29, 1974, Lawrence wrote appellee a letter advising him that he would not be recommended for a continuing contract because of his failure in observing deadlines for reports and the necessity of more evidence of long range planning. From the evidence presented at trial, the trial judge determined that neither of the two alleged deficiencies was sufficiently supported by the evidence to constitute a denial of continuing contract to appellee. The Court thereupon concluded that through its agents, the School Board had breached its agreement with appellee and that appellee was entitled to relief.
The crucial issue is whether Principal Coley had the authority to enter into an agreement with appellee that would be binding upon the School Board. Under the statutory scheme devised by the legislature, the exclusive contracting agent for a District School System is the School Board. F.S. § 230.22. The Superintendent's role in contract matters is to "confer with the principals and submit in writing to the School Board his nominations of all other persons to be appointed or reappointed as members of the instructional staff of the district school system." F.S. § 230.33 (7)(d). He is also to "recommend to the school board terms for contracting with employees and prepare such contracts as are approved. Contracts for the members of the instructional staff are to be prepared, recommended, and executed as hereinbefore prescribed." F.S. § 230.33 (7)(f). Finally, we examine the power of a public school principal to enter into contractual agreements. Prior to June 26, 1974, principals had no specific statutory power relating to contracts. On that date, Chapter 74-315 (Laws of Florida, 1974), became effective and directed each principal to "submit recommendations to the superintendent regarding the appointment, assignment, promotion, transfer, and dismissal of all personnel assigned to the school." See F.S. (1975) Section 231.085(2).
A reading of the above-quoted statutes makes clear the legislative intent. The School Board is to have exclusive authority to form contracts with the instructional personnel of the school system. The Board may accept or reject the recommendations of the superintendent who, in turn, may accept or reject the recommendations of the school principals. Neither a superintendent nor a principal, acting individually or collectively, may enter into a contractual agreement with a teacher without the express approval of the School Board.
Sub judice, the record indicates that an agreement, manifested by two memoranda, was executed and signed by appellee and by Principal Coley and his three subordinates in March of 1973. Principal Coley dispatched a letter, with copies of the memoranda attached, to Superintendent Lovell who was thereby informed of the agreement. The record on appeal does not reveal, however, whether the School Board was ever notified of, or acted upon, the agreement. In the absence of a showing that the School Board approved *311 the agreement in question, there can be no finding that the agreement had a binding effect upon the Board. Thus, the trial court erred at the outset when he framed the issue in the instant case as "whether the School Board breached its agreement ..." Our conclusion is that the School Board could not breach an agreement to which it never agreed.
Our conclusion is buttressed by the presence in the record of the standard form contract which appellee signed in June of 1973, which, of course, is a time more than two months subsequent to the signing of the memoranda relied upon by appellee. Paragraph nine of the form contract states that appellee "... shall have probationary status and no legal cause shall be required of the school board in the event that the Teacher is not re-employed by the school board after June 14, 1974." The foregoing provision directly contradicts the agreement entered into between appellee and Principal Coley. The fact that paragraph nine remained in appellee's contract with the School Board indicates that the Board intended to treat appellee in the same manner as any teacher employed on annual contract status. Moreover, even assuming that the agreement between appellee and Principal Coley was binding on the School Board, the subsequent signing of the formal contract by appellee containing paragraph nine would have the effect of superseding or abrogating the initial agreement. See 17A C.J.S. Contracts Section 386, p. 458.
Consequently, the final judgment entered in favor of appellee is reversed, and the cause is remanded to the trial court with directions that judgment be entered in favor of appellant.
COX, JOHN S., Associate Judge, concurs.
SMITH, J., concurs with opinion.
SMITH, Judge (concurring).
I concur in the court's decision and with Chief Judge Boyer's opinion concerning Goodson's asserted contract with the Board. I would add only that Fourteenth Amendment considerations of substantive due process,[1] asserted alternatively by Goodson and alluded to in the circuit court's decision, do not avail Goodson's claim for continuing employment.
The Board gave Goodson no reasons for denying him a tenured contract. Lawrence, the new principal, gave him two reasons for withholding a favorable recommendation to the Board:
"1. Not observing deadlines for submitting reports. (Monies collected in September of 1973 were not turned in until February of 1974.) This is contrary to school policy.
"2. More evidence of long range planning is needed."
The circuit judge who tried the case without a jury found the first stated reason was "trivial" and the second was supported by "no evidence"[2] and contradicted by "all of the evidence." These explicit findings command respect. However, the disposition of Goodson's constitutional claim rests on grounds other than the force of the *312 Board's evidence and the adequacy of its reasons for acting as it did.
Roth[3] and Sindermann[4] remind us that the Fourteenth Amendment prevents State deprivation of State-acknowledged property rights without due process and does not create for Goodson a federal property right to continued employment. It is therefore not enough for Goodson to claim that it was arbitrary, capricious and trivial for the Board not to grant him a continuing contract.[5] Goodson must show also that, because of tenure existing by formal contract or de facto understandings and arrangements,[6] he had a right when terminated not to be denied continuing employment arbitrarily.
Goodson's constitutional argument fails because the State did not at any time foster in him a present legitimate claim to continuing employment, as distinguished from a fervent hope and expectation of imminent tenure. No promise was made to Goodson by the March 1973 memoranda which afforded to him de facto status as a tenured employee. Metropolitan Dade Co. v. Peterson, 311 So.2d 119 (Fla.App.3d, 1975).[7]
In the final analysis, Goodson's argument is predicated not on the Board's arbitrary deprivation of an existing property right but on the Board's capricious frustration of his expectancy. His real claim is not that he was tacitly granted tenure which was groundlessly taken away[8] but *313 that, because of the March 1973 memoranda and his subsequent efforts, the Board's future decision to grant or deny him tenure became the prisoner of his hope. Goodson is wrong. To have a constitutionally-protected right to continuing employment, he
"... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, supra n. 1, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.
NOTES
[1] Goodson does not complain he was denied an opportunity to be heard by the Board on the question of his retention. Such a claim of procedural due process benefits would necessarily be predicated on the same showing which Goodson must make in order to invoke a substantive due process right of relief from arbitrariness. Board of Regents v. Roth, 408 U.S. 564, 571-72, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548, 557-58 (1972).
[2] We may assume that Board action taken for a plausibly legitimate reason which is wholly unfactual is arbitrary by Fourteenth Amendment standards. Lucas v. Chapman, 430 F.2d 945, 948 (5th Cir.1970); Simard v. Board of Ed., 473 F.2d 988, 994 (2d Cir.1973).
[3] Supra n. 1, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." See also Roane v. Callisburg Ind. School Dist., 511 F.2d 633, 638 (5th Cir.1975).
[4] Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
[5] Here, as in Jeffries v. Turkey Run Consolidated School Dist., 492 F.2d 1, 3 (7th Cir.1974), "... plaintiff alleges that the Board decision was itself completely without basis in fact or logic, and argues that such an arbitrary and capricious action violates her constitutional right to `substantive due process.'" Judge (now Justice) Stevens wrote for the court that "the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument." Id. at 4. Public employment may not be subjected to any conditions "regardless of how unreasonable," but judicial intervention is ordinarily confined to instances in which the asserted "unreasonable" condition requires employee sacrifice of a constitutionally protected right and is unrelated to legitimate goals of the employer. Keyishian v. Board of Regents, 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629, 642 (1970). But see Johnson v. Board of Pub. Instr., 241 So.2d 445 (Fla.App.2d, 1970).
[6] Sindermann, supra n. 4, 408 U.S. at 600, 92 S.Ct. at 2700, 33 L.Ed.2d at 579; Wahba v. New York Univ., 492 F.2d 96, 98 n. 2 (2d Cir.1974), cert. den. 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); Simard v. Board of Ed., supra n. 2, 473 F.2d at 992. A present property right and legitimate claim to tenure may arise from "the surrounding circumstances including existing rules and understandings." Powell v. Jones, 56 Ill.2d 70, 77, 305 N.E.2d 166, 170 (1973). It may emerge from the "common law" of a school district, "comprised of both written policies and actual practices." Roane v. Callisburg Ind. School Dist., supra n. 3, 511 F.2d at 638.
[7] See also the analysis by the Supreme Court of Idaho in Loebeck v. Idaho State Bd. of Ed., 96 Idaho 459, 461, 530 P.2d 1149, 1151 (1975), a case weaker on the facts than Goodson's: "Nothing ... conferred on appellant any legitimate entitlement to tenure. She had nothing more than a hope of receiving tenure... . Although appellant had been rehired in consecutive years that did not change her nontenured status. She had only come closer to the time at which a decision had to be made as to granting or non-granting of tenure." See also LaBorde v. Franklin Parish School Board, 510 F.2d 590, 593 (5th Cir.1975), in which an asserted property interest predicated on an encouraging statement by the assistant superintendent was rejected.
[8] See Shaw v. Board of Trustees, 396 F. Supp. 872, 886 (D.Md. 1975), in which, for Fourteenth Amendment purposes, the court expressly equated formal tenure with "a legitimate claim of entitlement to continued employment in the absence of just cause."