971 So.2d 1020 (2008)
James E. McCALISTER, Jr., Superintendent of the Bay County School District, Appellant,
v.
SCHOOL BOARD OF BAY COUNTY and Larry Bolinger, Appellees.
No. 1D07-2235.
District Court of Appeal of Florida, First District.
January 10, 2008.
*1021 Martha Harrell Chumbler, Daniel Hernandez, and Christine R. Davis of Carlton Fields, P.A., Tallahassee, for Appellant.
Joy Frank, Florida Association of District School Superintendents, Tallahassee, for Florida Association of District School Superintendents, Amicus Curiae for Appellant.
Franklin R. Harrison and Robert A. Fleming, III of Harrison, Sale, McCloy, Thompson, Duncan & Jackson, Chtd., Panama City, for Appellee School Board of Bay County; Mary F. Aspros, Ronald G. Meyer, and Jennifer S. Blohm of Meyer and Brooks, P.A., Tallahassee, for Appellee Larry Bolinger.
Major B. Harding and J. Jeffrey Wahlen of Ausley & McMullen, Tallahassee, for Florida School Boards Association, Inc., Amicus Curiae for Appellees.
WOLF, J.
Appellant, James McCalister, Jr., Superintendent (Superintendent) of the Bay County School District, timely appeals a final order of appellee, the School Board of Bay County (School Board), rejecting his recommendation to transfer appellee, Larry Bolinger (Bolinger), from his position as principal of Bay County High to the position of principal at Jinks Middle School. The Superintendent asserts the following arguments: (1) the School Board did not have the statutory authority to enter an order requiring the Superintendent to retain Bolinger as principal of Bay High until 2009; and (2) the School Board did not have the statutory authority to reject the Superintendent's recommendation to transfer Bolinger to the principal position at Jinks Middle School. We agree and reverse.
In June of 2005, the Superintendent recommended Bolinger for the vacant principal *1022 position at Bay High. Bolinger and the Superintendent met in private to discuss the offer, and, during this meeting, the Superintendent agreed to allow Bolinger to remain as principal of Bay High until he was expected to retire, four years later. Bolinger accepted the offer and, in the 2005-2006 school year, was able to raise the performance level of Bay High from a "D" to a "C." However, during that school year, Bolinger was involved in an incident regarding the choice of the school valedictorian which ultimately ended in his recommended transfer.
The School Board voted to reject the recommendation to transfer Bolinger based on its belief that the transfer (1) was not in Bay High's best interest; and (2) violated the Superintendent's assurance that Bolinger would be able to remain at Bay High until his retirement. Following the transfer rejection, Bolinger entered into a written contract with the School Board to serve as principal of Bay High for the 2006-2007 school year. The Superintendent challenged the decision of the School Board to reject his recommendation of transfer by filing a Petition for Formal Administrative Hearing with the School Board. The School Board referred the petition to the Department of Administrative Hearings who held an evidentiary hearing at which the five School Board members, Bolinger, and the Superintendent testified regarding the recommended transfer. Following the hearing, the Administrative Law Judge (ALJ) entered a recommended order.
In the Recommended Order, the ALJ concluded, in relevant part:
70. The School Board has the burden of proving by a preponderance of the evidence that it had good cause to reject the Superintendent's recommendation to transfer Bolinger. See Dileo v. School Board of Dade County, 569 So.2d 883, 884 (Fla. 3d DCA 1990).
. . . .
72. The School Board's responsibilities are set forth in section 1012.22(1)(a), Florida Statutes, which states . . .:
. . . .
2. The district school board may reject for good cause any employee nominated.
. . . .
76. In this case, the School Board had reason to believe that Bolinger's transfer after one very successful year at Bay High, so close to the beginning of the next school year, would adversely impact the forward progress of the school under the A+ Plan. The transfer would damage the morale of the students, faculty, staff, parents, and community members, who had rallied to improve Bay High academically and in other areas such as attendance, discipline, and pride in the physical facility under Bolinger's strong leadership. In the absence of any reason for the Superintendent's action, the School Board was not required to risk Bay High's future by approving the Superintendent's proposed transfer of Bolinger, the one person that the Superintendent recently considered the best and only person who could "fix" Bay High. In one year, Bolinger may have "ruffled some feathers" but he certainly made substantial gains towards "fixing" Bay High.
77. There is no legal prohibition against a school board rejecting for "good cause" a superintendent's recommended transfer based upon the performance of the school and the impact such transfer would have on the school. Under the facts of this case, the School Board had "good cause" not to approve Bolinger's transfer based on lawful, rational, *1023 non-arbitrary, non-statutory reasons.
RECOMMENDATION
Based on the foregoing Findings of Fact and Conclusions of Law, it is
RECOMMENDED:
That the School Board enter a final order rejecting the Superintendent's recommendation to transfer Larry Bolinger.
Following the entry of the Recommended Order, the School Board held a hearing devoted to the writing of the Final Order and subsequently issued an order containing the following pertinent language:
The SCHOOL BOARD OF BAY COUNTY, FLORIDA therefore accepts, approves and adopts in their entirety the Findings of Fact, Conclusions of Law and Recommendation contained in the Recommended Order subject only to the corrections and modifications as outlined in this Final Order and rejects the Superintendent's recommendation to transfer Larry Bolinger from his position as Principal of Bay High School and further because the Superintendent accepted the benefits of his agreement with Larry Bolinger by assigning him to Bay High School, orders that the Superintendent is precluded from removing Larry Bolinger from the Principal position at Bay High School for the 2007-2008 and 2008-2009 school years subject to the provisions of Bay County School Board Policy 4.113 entitled Suspensions or Dismissal.
(Emphasis added).
This appeal involves the respective powers of superintendents and school boards, both of which hold certain authority with respect to the direction and control of all public schools within their district. More specifically, this court must determine if a school board is endowed with the statutory authority to reject a superintendent's recommended transfer of a principal based on its belief that the principal's transfer would negatively affect the school he would be leaving, without taking into consideration his suitability for the position to which he is recommended. Based on a plain reading of the statutory scheme authorizing school board actions regarding recommendations of a superintendent, this court determines that a school board lacks this specific authority.
Article IX of the Florida Constitution creates the office of both the school board and the school superintendent. This constitutional article gives us little insight in the division of powers between school boards and superintendents. Article IX, section 4(b) of the constitution creates school boards and provides that "[t]he school board shall operate, control and supervise all free public schools within the school district. . . ." Article IX, section 5 creates the position of superintendent but does not describe the duties of the office.
The Legislature thus has broad powers to define the relationship between the school board and the superintendent. See Armistead v. State ex rel. Smyth, 41 So.2d 879 (Fla.1949) (recognizing that education powers conferred by the Florida Constitution are further refined and limited by statute); Harvey v. Bd. of Pub. Instruction, 101 Fla. 273, 133 So. 868 (1931) (same).[1]
The statutory framework defines the general relationship between school boards and superintendents as well as the specific *1024 relationships concerning the power of supervision over proposed appointments made by the superintendent.
Within each school district, the Legislature has assigned specific duties to certain positions: (1) school boards "shall operate, control and supervise" the public schools in their district and may exercise any power except those prohibited by the constitution or general law; and (2) the superintendent is charged with "the administration and management of the schools and for the supervision of instruction in the district." § 1001.32(2)-(3), Fla. Stat. (2006).
The general powers and duties of district school boards are set forth in sections 1001.41 and 1001.42, Florida Statutes (2006). These include the powers to determine policies and programs for the efficient operation and general improvement of the district school system, to adopt rules, to prescribe standards and policies to provide each student the opportunity to receive a complete education program, to assign students to particular schools, to develop and execute plans for the operation of schools, and to provide for the transportation of students, as well as other duties generally relating to the operation of the school district. The school board is empowered to contract, sue, and be sued. Indeed, the school board is the exclusive contracting agent for the district school system. § 1001.41(4), Fla. Stat. (2006); Sch. Bd. v. Goodson, 335 So.2d 308, 310 (Fla. 1st DCA 1976).
Section 1001.42 also assigns school boards certain duties relating to school personnel. That statute specifically authorizes a school board to "[d]esignate positions to be filled, prescribe qualifications for those positions, and provide for the appointment, compensation, promotion, suspension, and dismissal of employees . . . ." § 1001.42(5)(a), Fla. Stat. (2006).
The district school superintendent is the secretary and executive officer of the district school board, and as such, is responsible for the administration and management of schools and for the supervision of instruction in the school district. §§ 1001.32(3), 1001.33, 1001.48, Fla. Stat. (2006). The general powers and duties of district superintendents are set forth in section 1001.49, Florida Statutes (2006). School superintendents are required to:
(1) General oversight.  Exercise general oversight over the district school system in order to determine problems and needs, and recommend improvements.
(2) Advise, counsel, and recommend to district school board.  Advise and counsel with the district school board on all educational matters and recommend to the district school board for action such matters as should be acted upon.
(3) Recommend policies.  Recommend to the district school board for adoption such policies pertaining to the district school system as the district school superintendent may consider necessary for its more efficient operation.
(4) Recommend and execute rules.  Prepare and organize by subjects and submit to the district school board for adoption such rules to supplement those adopted by the State Board of Education as, in the district school superintendent's opinion, will contribute to the efficient operation of any aspect of education in the district. . . .
(5) Recommend and execute minimum standards.  From time to time prepare, organize by subject, and submit to the district school board for adoption such minimum standards relating to the operation of any phase of the district school system. . . .
§ 1001.49(1)-(5), Fla. Stat. (2006).
A superintendent also must perform all tasks necessary to make sound recommendations, *1025 nominations, proposals, and reports to be acted upon by the school board, and to direct the work of school personnel, subject to the requirements of chapter 1012, Florida Statutes. § 1001.51, Fla. Stat. (2006).
The specific provisions relating to appointment of personnel are sections 1012.27 and 1012.22, Florida Statutes (2006). Section 1012.27, Florida Statutes (2006), sets forth the school superintendent's duties and provides in pertinent part:
The district school superintendent is responsible for directing the work of the personnel, subject to the requirements of this chapter, and in addition the district school superintendent shall perform the following:
(1) Positions, Qualifications, and Nominations. 
(a) Recommend to the district school board duties and responsibilities which need to be performed and positions which need to be filled to make possible the development of an adequate school program in the district.
(b) Recommend minimum qualifications of personnel for these various positions, and nominate in writing persons to fill such positions.
(Emphasis added). Section 1012.22(1), Florida Statutes (2006), describes the authority of the school board to reject a superintendent's nominations and to transfer recommendations and provides in pertinent part:
(a) Positions, qualifications, and appointments. 
1. The district school board shall act upon written recommendations submitted by the district school superintendent for positions to be filled, for minimum qualifications for personnel for the various positions, and for the persons nominated to fill such positions.
2. The district school board may reject for good cause any employee nominated.
. . . .
(e) Transfer and promotion.  The district school board shall act on recommendations of the district school superintendent regarding transfer and promotion of any employee.
(Emphasis added). The superintendent is vested with the sole power to nominate employees for service with the school district. Illustrative of this point, both parties concede that, had the Superintendent simply left Bolinger's name off his list of nominations for the 2006-2007 school year, Bolinger would have no legal cause to challenge his termination. In contrast, the school board's authority to act on the nominations and transfer recommendations of a superintendent is limited. The explicit wording of section 1012.22, Florida Statutes (2006), authorizes the school board to act on a superintendent's nomination and recommended transfer but limits this action to an acceptance or rejection on consideration of good cause. While the "good cause" provision does not expressly address transfer recommendations, it "is elementary and particularly so in this case that to transfer personnel an appointment is necessitated . . ." Von Stephens v. Sch. Bd., 338 So.2d 890, 893 (Fla. 2d DCA 1976) (rejecting the School Board's assertion that a transfer recommendation does not trigger the good cause standard for rejection) (emphasis added).
This statutory scheme envisions the school board as having the power to reject an appointment under limited circumstances but not to mandate that the superintendent keep a particular person in a particular position.
*1026 While the record amply evidences Bolinger was successfully performing his duties as principal of Bay High, the relevant statutes, as well as existing case law, dictate that the School Board could only reject Bolinger's nomination for the position as principal at Jinks Middle School if questions existed regarding his ability to adequately perform in the position for which he was nominated.[2] This necessarily excludes the School Board's, as well as this court's, consideration of Bolinger's suitability for the position he wished to retain. Accordingly, we reverse the School Board's final order rejecting the Superintendent's recommended transfer.
The Superintendent further challenges the School Board's inclusion of additional language to the ALJ's recommended order requiring the Superintendent retain Bolinger until the close of the 2009 school year. Again, the School Board lacked legislative authority to require such an action. In School Board v. Goodson, 335 So.2d 308, 310 (Fla. 1st DCA 1976), this court failed to give effect to an employment agreement entered into between a principal and a teacher, noting:
The crucial issue is whether Principal Coley had the authority to enter into an agreement with appellee that would be binding upon the School Board. Under the statutory scheme devised by the legislature, the exclusive contracting agent for a District School System is the School Board. F.S. s 230.22. The Superintendent's role in contract matters is to `confer with the principals and submit in writing to the School Board his nominations of all other persons to be appointed or reappointed as members of the instructional staff of the district school system.' F.S. s 230.33(7)(d). He is also to `recommend to the school board terms for contracting with employees and prepare such contracts as are approved. Contracts for the members of the instructional staff are to be prepared, recommended, and executed as hereinbefore prescribed.' F.S. s 230.33(7)(f). Finally, we examine the power of a public school principal to enter into contractual agreements. Prior to June 26, 1974, principals had no specific statutory power relating to contracts. On that date, Chapter 74-315 (Laws of Florida, 1974), became effective and directed each principal to `submit recommendations to the superintendent regarding the appointment, assignment, promotion, transfer, and dismissal of all personnel assigned to the school.' See F.S. (1975) Section 231.085(2).
A reading of the above-quoted statutes makes clear the legislative intent. The School Board is to have exclusive authority to form contracts with the instructional personnel of the school system. The Board may accept or reject the recommendations of the superintendent who, in turn, may accept or reject the recommendations of the school principals. Neither a superintendent nor a principal, acting individually or collectively, may enter into a contractual agreement with a teacher without the express approval of the School Board.[3]
335 So.2d at 310 (Fla.1976). Based on the foregoing, the Superintendent correctly *1027 contends that, even if he had entered into an oral contract with Bolinger, this agreement can have no legal effect, as he was without the authority to enter into the contract.
While the superintendent is endowed with the authority to nominate an employee for a certain position, as previously discussed, it is the school board that retains the contracting authority for the school districts. §§ 1012.22(1)(d); 1012.27(1)(b), Fla. Stat. (2006). In addition, section 1012.33(1)(b), Florida Statutes (2006), further defines the school board's powers to contract with principals and states:
A supervisor or school principal shall be properly certified and shall receive a written contract as specified in this section. Such contract may be for an initial period not to exceed 3 years, subject to annual review and renewal. The first 97 days of an initial contract is a probationary period. During the probationary period, the employee may be dismissed without cause or may resign from the contractual position without breach of contract. After the first 3 years, the contract may be renewed for a period not to exceed 3 years and shall contain provisions for dismissal during the term of the contract only for just cause, in addition to such other provisions as are prescribed by the district school board.
(Emphasis added).
The relevant statutes expressly authorize only a school board to enter into contracts with principals based on the written recommendation of a superintendent. These contracts cannot initially extend past the three-year requirement. § 1012.33(1), Fla. Stat. (2006). Any renewals after the first three years must be authorized through the entry of a second contract. Id. Accordingly, based on the language of these statutes, the school board's addition of the disputed language to the Final Order was well outside the confines of its legislative authority for the following reasons: (1) the written nomination by the Superintendent had already been accepted and acted on by the School Board when they executed a one-year employment contract with Bolinger, and the Superintendent never wrote a recommendation for Bolinger to remain for four years; and (2) while the added language establishing the four-year contract in the Final Order referenced the termination policies established for the Bay County School Board, the oral contract was for an unauthorized period of four years and was not written and executed between the School Board and Bolinger as required by statute.
It is clear, when the relevant statutes are read in pari materia, that a specific process exists for the hiring of principals. That process requires that a superintendent formally execute a written recommendation upon which a school board must act. If the recommendation is accepted, the school board must execute a written contract between themselves and the candidate. This process was followed, and Bolinger was awarded a one-year contract by the School Board, which he executed. The School Board cannot seek to redefine this legislatively imposed process through the enforcement of an alleged oral contract that was entered into in violation of its statutory authority. The statutes's meaning is plain and is not for the School Board or this court to rewrite.
For the foregoing reasons, we reverse the final order of the School Board.
BARFIELD and HAWKES, JJ., concur.
NOTES
[1] While section 1001.32(2), Florida Statutes (2006), provides for home rule powers of the school district to operate, supervise, and control free public schools, it specifically recognizes these powers are limited by general law.
[2] The Florida School Boards Association, Inc., in its amicus curiae brief, points out that increasing focus on the recently enacted school rating system requires school boards take a more active role in personnel decisions. While this may be the case, this is an argument for the Legislature, not this court.
[3] While this court in Goodson considered the predecessor statutes to the current statutory scheme, the wording analyzed is sufficiently similar to the prior scheme.