563 F.2d 1159
 22 Fair Empl.Prac.Cas. 1526, 15 Empl. Prac.
Dec. P 7955
Anthony T. LEE et al., Plaintiffs,
United States of America, Plaintiff-Intervenor, Amicus Curiae,
National Education Association, Inc., et al.,
Plaintiffs-Intervenors, Appellants,
v.
RUSSELL COUNTY BOARD OF EDUCATION et al., Defendants-Appellees.
 No. 76-3815.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 11, 1977.
 
 Donald V. Watkins, Montgomery, Ala., for plaintiffs.
 Thomas M. Keeling, Atty., Dept. of Justice, Teresa T. Milton, Washington, D. C., Ira DeMent, U. S. Atty., Montgomery, Ala., for amicus curiae.
 Sydney S. Smith, Phenix City, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before AINSWORTH, GODBOLD and HILL, Circuit Judges.
 AINSWORTH, Circuit Judge.
 
 
 1
 This appeal involves two distinct claims relating to the sensitive and difficult problem of the assignment of schoolteachers and staff in the wake of the school desegregation process. Plaintiff Evelyn Evans contends that she has suffered a wrongful demotion within the meaning of this court's decision in Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 419 F.2d 1211. Mrs. Evans was a full-time counselor in an all-grades black school before desegregation. With the consolidation that accompanied desegregation, Mrs. Evans was transferred to a full-time counseling position at an elementary school. She claims that this was a demotion within the meaning of Singleton. The other plaintiff, Mrs. Arlene Mack, was employed by the defendant school board for one year in a program funded by Title I of the Elementary and Secondary Education Act of 1965.[1] When Title I funds were exhausted, Mrs. Mack applied for a new position. She claims that despite her superior qualifications, two white teachers were hired and that the hiring decision was informed by a desire to meet a fixed racial ratio in contravention of the 1970 school desegregation order, part two of the mandatory policy set forth in Singleton, and the Fourteenth Amendment. Mrs. Evans' claim will be addressed first.
 
 
 2
 Mrs. Evans was transferred from her counseling position at Mount Olive School (grades 1-12) to Dixie Elementary School pursuant to the consolidation of the school system under the 1970 desegregation order, despite her indicated preference to remain at Mount Olive. Mrs. Evans testified that the bulk of her counseling duties at Mount Olive consisted of preparation of high school students for college. The salary for the counseling position at Dixie Elementary was the same as that for counseling at Mount Olive. The counseling position at Dixie was funded by Title I, as was the position at Mount Olive, and when such funds were terminated for elementary counseling in 1974, Mrs. Evans was forced to split her time between counseling and classroom teaching. During the period between Mrs. Evans' transfer to Dixie and the commencement of the present suit five vacancies occurred in high school level counseling positions in Russell County, and all these positions were filled by white applicants. Mrs. Evans was not offered any of these positions. Plaintiff did not, however, seek a transfer to a high school counseling position, and did not bring this suit until after the termination of Title I funds and her change to part-time counseling, four years after her transfer to Dixie Elementary School.
 
 
 3
 The lower court found that the transfer of Mrs. Evans to the elementary school counseling job did not constitute a "demotion" under the standards set forth in Singleton. The scope of our review of the trial court's determination is limited to whether its decision was "clearly erroneous." See Fed.R.Civ.P. 52(a); Jennings v. Meridian Municipal Separate School District, 5 Cir., 1971, 453 F.2d 413; Moore v. Winfield City Bd. of Educ., 5 Cir., 1971, 452 F.2d 726.
 
 
 4
 In Singleton we declared (en banc ) the appropriate standards to govern the problems relating to the desegregation of faculties in the context of consolidation following the dismantling of dual school systems. The application of Singleton's dismissal and demotion standards is limited to the particular problem of a smaller faculty caused by school desegregation. See Barnes v. Jones County School District, 5 Cir., 1977, 544 F.2d 804 (faculty size must show a net decline to activate Singleton ); Pickens v. Okolona Municipal Separate School Dist., 5 Cir., 1976, 527 F.2d 358. (Singleton only applies when desegregation is the cause of the demotion or dismissal.) Singleton requires demotions or dismissals caused by desegregation to be on the basis of objective and nondiscriminatory standards. In addition, staff members who are properly demoted or dismissed are entitled to special preference in rehiring. The Singleton court defined demotion rather explicitly, including jobs with less responsibility and jobs which require a lesser degree of skill or include subjects or grades for which the staff member is not certified or recently experienced, as well as a decline in salary.[2]
 
 
 5
 Several Fifth Circuit decisions have considered the construction of Singleton's "demotion" standard. In Lee v. Macon County Bd. of Educ. (Thomasville), 5 Cir., 1972, 470 F.2d 958, the court correctly noted that responsibility is the central value protected by Singleton's demotion provision. An increase in salary is not necessarily determinative, see Lee v. Macon Cty. Bd. of Educ. (Muscle Shoals), 5 Cir., 1971, 453 F.2d 1104 (black principal demoted to Head Start teacher despite fact that his salary increased), nor is the title, see Lee v. Macon Cty. Bd. of Educ. (Thomasville), supra. (Black principal was not demoted to administrative assistant to the school superintendent. The court held that responsibilities were not "significantly different." (emphasis added)
 
 
 6
 In Mrs. Evans' case, neither her title nor her salary has changed as a result of her transfer to elementary counseling. Plaintiff's claim focuses on the altered character of her work. She contends that counseling in high school requires more skill and involves more responsibility than her work as counselor in an elementary school.
 
 
 7
 There are two decisions of this court that address the problem of comparing similar positions at different educational levels. In Bassett v. Atlanta Independent School Dist., 5 Cir., 1973, 485 F.2d 1268, the court dealt with a school district with two fewer high schools after desegregation. This consolidation eliminated the position of principal of the black school. The black principal insisted that he should be named principal of either the high school or the junior high. The district court found no violation of Singleton in the school board's refusal to do so, but nevertheless ordered the plaintiff to be installed as principal of the elementary school with back pay and costs, even though he had previously refused to accept that position. The case was reversed and remanded to determine whether the school board should be required to offer the first available principalship to the plaintiff. The lower court had found that an elementary principalship was not a demotion from being principal of a black high school. The panel rejected this reasoning out of hand, noting that an elementary principalship was "not . . . comparable in responsibility" with senior or junior high principalships. Id. at 1271. Regardless of the questionable precedential value of this observation, the comparison of the two principalships is distinguishable from Mrs. Evans' case. Although principals' duties are fairly similar, the head of a high school can properly be said to have more responsibility than the head of an elementary school. The same cannot so easily be said of a comparison of high school and elementary counseling positions.
 
 
 8
 The second case involving a comparison of jobs at different educational levels is easily distinguishable. In McCurdy v. School Bd. of Palm Beach County, Florida, S.D.Fla., 1973, 367 F.Supp. 747, aff'd 5 Cir., 1975, 509 F.2d 540, the court held that a transfer from a senior high principalship to a junior high principalship was a "demotion." However, in this case the junior high principal received a smaller salary than his counterpart in the senior high.
 
 
 9
 We have given due regard to Mrs. Evans' argument, but we cannot find the trial court's determination clearly erroneous. Mrs. Evans' testimony regarding the decline of her responsibilities was countered by the School Superintendent's insistence that her responsibilities were the same, if not actually greater. Plaintiff offered no evidence other than her own testimony to support her claim that her responsibilities had decreased. Mrs. Evans' certification as a counselor made no distinction between elementary and secondary school positions, suggesting that the level and the character of skill required for the two positions is not dramatically different. Our examination of the record does not reveal that the differences between Mrs. Evans' two counseling positions rise to the level of a Singleton demotion. Subjective impressions as to the desirability of one position over another cannot control our decision of whether there has been a decline in responsibility. Singleton must not be read to mandate an impossible congruence of old and new responsibilities. See, e. g., McLaurin v. Columbia Municipal Separate School Dist., 5 Cir., 1976, 530 F.2d 661 (finding that home economics and occupational orientation positions are equivalent).
 
 
 10
 Mrs. Evans' subsequent change from full-time to part-time counselor at Dixie Elementary School does not constitute a Singleton demotion, as the change was not directly caused by the desegregation process, but rather by the cutoff of Title I funding. See Lee v. Chambers County Board of Educ., 5 Cir., 1976, 533 F.2d 132.[3]
 
 
 11
 Mrs. Evans has emphasized the fact that there were five vacancies in high school level counseling in Russell County after her transfer to Dixie in 1970. But as we have decided that the initial transfer was not a demotion, the preferential rehiring provision of Singleton does not apply, and the school board had no duty to offer the job to Mrs. Evans. As Mrs. Evans did not seek to transfer to a high school counseling position, we need not consider whether the school board's decision to fill these vacancies with white counselors was impermissibly motivated.
 
 
 12
 The layoff of the second plaintiff, Mrs. Mack, also was not caused by the desegregation process, but rather by the cutoff of Title I funds. However, the 1970 desegregation order in both the Russell County case and Singleton prohibit racial discrimination in staff assignments after the initial reassignments to effectuate desegregation, and dismissals and demotions following consolidation have been cured:
 
 
 13
 Staff members who work directly with school children and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, and dismissed without regard to race or color.
 
 
 14
 Singleton, supra, 419 F.2d at 1218. Thus, if Mrs. Mack was denied a position because the school board was attempting to preserve a certain racial ratio in their faculty, she would be entitled to appropriate relief. Several recent cases in this circuit have squarely rejected school boards' attempts to preserve the racial ratios ordered in the initial desegregation decision. See Lee v. Macon Cty. Bd. of Educ. (Conecuh County), 5 Cir., 1973, 482 F.2d 1253, 1254-55; Carter v. West Feliciana Parish School Bd., 5 Cir., 1970, 432 F.2d 875; cf. Barnes v. Jones Cty. School Dist., 5 Cir., 1977, 544 F.2d 804. (Singleton demotion claim rejected, remanded for a determination of discrimination on the basis of race); McCormick v. Attala Cty. Bd. of Educ., 5 Cir., 1976, 541 F.2d 1094 (replacement scheme invalidated whites were replaced only with whites, and blacks with blacks). The law in this circuit is quite clear: after faculty desegregation has been effectuated by remedial orders based on racial ratios the school board cannot continue to make personnel decisions on the basis of such racial ratios. Cf. Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976) (once unitary system is achieved, the district court cannot continue to intervene in order to preserve a racial balance in pupil assignment).
 
 
 15
 The question before us now is whether the school board did in fact engage in hiring on the basis of fixed racial ratios, and whether Mrs. Mack was refused a position on the basis of such impermissible discrimination. Unfortunately, the district court's findings of fact and conclusions of law fail to address this aspect of Mrs. Mack's claim, focusing instead on the inapplicability of the demotion and dismissal provisions of Singleton.
 
 
 16
 One important fact suggesting the operation of a fixed racial ratio in faculty hiring in Russell County is that the racial ratio of the district as a whole has not changed since the implementation of the 1970 desegregation decree. In addition, the testimony of Warren Richards, Superintendent of Education in Russell County, admits the existence of a racial ratio hiring policy of 35% white and 65% black. However, when Superintendent Richards was asked specifically whether hiring operated on a quota system that would rigidly exclude applicants from consideration, he replied that there would not necessarily be an exclusion from consideration, but rather that there would be a preference in favor of staying within the ratio. Mr. Richards stated that the five vacancies in high school counseling positions were filled with whites, in part because of the board's efforts to maintain a ratio. He was careful to note that the board's aim was to fill a quota rather than identifying certain positions as reserved for either blacks or whites.
 
 
 17
 The Superintendent's testimony on the effect of the racial ratio hiring policy on Mrs. Mack's application was more ambiguous. Mrs. Mack applied for one position in English or social studies that was eventually granted to a white woman, Mrs. Fiddler. The Superintendent indicated that it was possible that Mrs. Mack was qualified for the position, but that the decision was made in favor of Mrs. Fiddler because the principal of the school had indicated a preference for her. Mr. Richards admitted that the principal may well have been motivated by a desire to make the racial quota "work out." No comparison of the qualifications of the two applicants was made at that time. However, he testified that Mrs. Fiddler was better qualified for the position because she had majored in English, whereas Mrs. Mack had been a social studies major. The other vacancy filled by a white teacher laid off because of the Title I cutoff was explained in terms of racial and sexual balance for the best operation of the counselor's position rather than a strict racial quota. Superintendent Richards testified that he felt that the students would be better served by a white male counselor in a school where the other counselor was a black woman, reasoning that students identified better with counselors of their own race and sex.
 
 
 18
 Despite the ambiguities regarding the effect of the use of a racial ratio on Mrs. Mack, the evidence suggests that race may in fact have been a significant factor in her failure to obtain a position. Since the district court failed to consider or discuss the racial quota issue in his findings of fact and conclusions of law, it is appropriate that the case be remanded for a more complete development of the record and for a final determination by the trial court of the merits of Mrs. Mack's claim, unfettered by considerations of a fixed ratio. The trial judge must decide, with appropriate findings, whether or not Mrs. Mack was impermissibly denied employment as a result of racial discrimination.
 
 
 19
 AFFIRMED as to plaintiff Mrs. Evans; VACATED AND REMANDED as to plaintiff Mrs. Mack.
 
 
 20
 GODBOLD, concurring in part and dissenting in part:
 
 
 21
 The extent to which an agency can be color conscious in remedying the effects of past racial discrimination is an issue pending before the Supreme Court in Regents of the Univ. of California v. Bakke, 18 Cal.3d 34, 132 Cal.Rptr. 680, 553 P.2d 1152, cert. granted, 429 U.S. 1090, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1977) (argued Oct. 11, 1977). I would await guidance from that case before deciding the appeal of Mrs. Mack.
 
 
 22
 Beyond that, I am not clear what the direction to the district court is: whether the school board could not consider the past ratio to any degree or only that it could not consider itself rigidly fettered by the past ratio. I suppose that if I were the district judge or a party I would wait to see what light may be forthcoming from Bakke and then try to put the puzzle together.
 
 
 23
 I do not construe the Fifth Circuit's decisions as holding that a unitary system is forbidden to be color conscious to any degree in post-unitary personnel decisions. But whatever one's construction of our past holdings, Bakke may well be the last word.
 
 
 
 [1]
 20 U.S.C. §§ 236, et seq
 
 
 [2]
 See Singleton v. Jackson Municipal Separate School District, 5 Cir., 1970, 419 F.2d 1211, 1218:
 " 'Demotion' as used above includes any re-assignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period."
 
 
 [3]
 In Chambers County plaintiff had been employed as a classroom teacher before desegregation. After desegregation he was transferred to Assistant Attendance Supervisor, a position funded by Title I. This new position was a promotion from classroom teaching. When Title I funds were terminated, the plaintiff was made a classroom teacher again. Although this was a "demotion," the court held that this demotion was not a result of desegregation. Unlike Mrs. Evans, the Chambers County plaintiff was in the same position after the cutoff of Title I funds that he was in before desegregation