**Manuel T. THOMAS, Plaintiff,**

v.

**BOARD OF TRUSTEES OF GALVESTON INDEPENDENT SCHOOL DISTRICT, et al., Defendants.**

Civ. A. No. G–78–31.

United States District Court,
S. D. Texas,
Galveston Division.

April 16, 1981.

---

David T. Lopez, Houston, Tex., for plaintiff.

David A. Livingston, Wycoff, Russell, Dunn & Frazier, Houston, Tex., Edward H. Schwab, III, Galveston, Tex., for defendant Vollert.

John S. McEldowney, Mills, Shirley, McMicken & Eckel, Galveston, Tex., for defendant Board of Trustees.

## MEMORANDUM AND ORDER

HUGH GIBSON, District Judge.

The plaintiff commenced this action in federal court in February 1978, complaining that the actions of the Board of Trustees of the Galveston Independent School District (Board) and Frank J. Vollert, former superintendent of the District, deprived him of rights secured by the Constitution and laws of the United States. The plaintiff has asserted causes of action arising under 42 U.S.C. §§ 1983 and 1988 (1966), 42 U.S.C. § 2000e, *et seq.* (1976), and 42 U.S.C. § 1981 (1976). The Court has jurisdiction over the subject matter and parties to this lawsuit pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202 (1976), and 42 U.S.C. § 2000e-5 (1976).

The gravamen of the plaintiff's complaint is his midterm reassignment from assistant principal at Stephen F. Austin Middle School to a non-administrative position in December of 1976. The Board ordered that reassignment upon the recommendation of defendant Vollert, who was then serving as superintendent of the district. The plaintiff asserts that, by virtue of the terms of his contract of employment with GISD, the reassignment deprived him of a protected property interest without due process of law. Additionally, the plaintiff contends that unsubstantiated reasons were urged as a basis for his reassignment and that the action was given widespread publicity, prejudicially foreclosing his freedom to seek similar employment opportunities. This, plaintiff maintains, deprived him of a liberty interest protected by the Fourteenth Amendment of the United States Constitution. Finally, plaintiff asserts that his reassignment was motivated by impermissible racial considerations and was violative of the equal protection rights secured to him by the Constitution and laws of the United States.

This action was set on the Court's docket for trial before a jury on February 19, 1980. On that day, however, the parties in open court advised the Court that they would waive trial by jury and submit the case to the Court for consideration on an agreed record, accompanied by evidentiary exhibits, depositions, and stipulations of the parties. The case is submitted to the Court for a determination of the issues of liability only, reserving the questions of damages and attorneys fees for a subsequent hearing. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court now enters this memorandum and order reflecting its findings of fact and conclusions of law on the issues of liability.

## I.

## THE FACTUAL CONTEXT

The plaintiff is a black adult male citizen of the United States and at all times material to this action was employed by GISD. At the time of his reassignment, the plaintiff had been an employee of the district for 19 years, 16 years as a classroom teacher, and 3 years as an assistant principal of a middle school. After having served an initial term as assistant principal, the plaintiff on or about July 28, 1976, entered into a contract of employment with GISD wherein he would serve as assistant principal of the Austin Middle School for a term ending June 15, 1977. Under the terms of the contract, plaintiff agreed to abide by and adhere to the rules and regulations of the district and to perform his duties as an assistant principal in accordance with "acceptable professional standards for the same or similar positions."

However, on December 3, 1976, defendant Vollert by letter informed the plaintiff that his duties as assistant principal at the middle school would terminate at the close of that school day.[1] Vollert recommended,

---

1. The text of that letter is as follows:

Mr. Manuel Thomas
Austin Middle School

Galveston, Texas
Dear Mr. Thomas:

and the Board approved, the plaintiff's reassignment to a classroom teaching position in art when one became available. In the interim, plaintiff was temporarily reassigned to work involving truancy and disciplinary problems, and he continued to receive the salary designated in his employment contract throughout the 1976–77 school year.

Plaintiff objected to his reassignment, and sought a hearing before the school board to challenge the action. The Board scheduled the matter for a hearing on the evening of January 3, 1977. The plaintiff elected to retain David Lopez as an attorney to represent him at the hearing. Prior to the scheduled hearing, Lopez advised Ed Schwab, counsel for the District, that he would object to the constitutional sufficiency of the notice given to plaintiff of the reasons for his reassignment, which at that time amounted to little more than the explanation given by the superintendent in his letter reassigning the plaintiff. In view of this, Schwab requested that the Board postpone the hearing until January 10 so that adequate notice might be given to the plaintiff. Lopez objected, however, to any continuance unless the plaintiff was returned to his assistant principal's position in the interim. The Board determined to postpone the hearing until January 10 so that specific reasons for the superintendent's recommendation could be furnished to the plaintiff, but declined to reinstate the plaintiff in the interim.

Subsequently, Schwab interviewed various faculty members at Austin Middle School in the course of developing a slate of reasons for plaintiff's reassignment. On January 6, 1976, Lopez was presented with a letter advising of some 21 incidents involving the plaintiff which were described as illustrative of the reason for the plaintiff's reassignment—to wit, superintendent Vollert's professional opinion that the plaintiff had failed to discharge his administrative responsibilities in accordance with accepted professional standards for the same or similar positions. Attached to the slate of incidents were the names of various witnesses which the District expected to call, with indication made as the events to which each witness would testify. Also attached was a job description of the assistant principal's position.

Lopez immediately notified Schwab of his objections to the timeliness and contents of the charges. The plaintiff, however, did not request a postponement of the January 10 hearing, which, at the request of the plaintiff, was open to the public.[2] Testimony not being concluded at the close of the January 10 session, the hearing was continued on January 19. Plaintiff was afforded a full opportunity to cross-examine the witnesses presented by the District and to offer testimony and witnesses in his own behalf. At the conclusion of the evidentiary hearing, the Board deliberated in closed ses-

This is to follow-up the conversations we have had during the past week and to confirm the decision I have reached concerning your status as vice-principal of Austin Middle School.

During the past two years, I have sensed considerable concern on the part of members of the Austin faculty and parents of Austin students over the general manner in which you have handled your administrative responsibilities. Some of the complaints in and of themselves would not seem to be of major consequence, but their cumulative effect has definitely impaired your professional image and job effectiveness. On occasion, I have discussed specific concerns with you, e. g., the incident last spring of two boys boxing in one of the restrooms.

I have reached the point where I feel that in the best interest of Austin Middle School it is necessary to reassign you to other duties within the school system, and I have presented this decision as a formal recommendation to the board of trustees. Your official responsibilities at Austin will terminate, therefore, at the close of school today. Please meet with me in my office at 10:00 a. m. Monday, December 7, to discuss your new assignment.

Sincerely,
/s/ Frank J. Vollert

2. Schwab recollects that he advised Lopez that he was willing to agree to a postponement of the January 10 hearing in order to give the plaintiff more time to prepare to respond to the charges made in the letter. Lopez, however, has no recollection of such conversation. The parties have stipulated as to the divergent recollections of their attorneys, in effect, agreeing to disagree on this point.

sion, and then, in a public vote, affirmed the plaintiff's reassignment by a 6–to–1 margin.[3]

## II.

### CLAIMS PRESENTED

#### A. *Plaintiff's Pre-Deprivation Procedural Due Process Claim*

It is undisputed that the plaintiff was reassigned from the position of assistant principal to a non-administrative position prior to the expiration of the employment period provided in his contract with GISD. Plaintiff contends that his employment contract, fairly construed, provided that he would not be relieved of his duties as assistant principal at Austin Middle School prior to the expiration of the contractual term except for cause, thus giving rise to the procedural due process requirement of notice and a prior opportunity for a hearing.

In order to demonstrate that he was entitled to procedural due process before any reassignment, however, the plaintiff must prove that he had a constitutionally protected property interest in continued employment as an assistant principal. Property interests are not created by the Constitution; rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source—such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have

a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

The right to employment by a state, in itself, is not a right secured by the Constitution or by the laws of the United States. *McDowell v. State of Texas,* 465 F.2d 1342, 1345 (5th Cir. 1971), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1371, 35 L.Ed.2d 610 (1973). Nevertheless, property interests may be created and their dimensions defined by a contract of employment with a state. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *United Steel Workers of America, AFL–CIO v. University of Alabama,* 599 F.2d 56, 60 (5th Cir. 1979); *Johnson v. San Jacinto Junior College,* 498 F.Supp. 555, 568 (S.D.Tex. 1980). A contract of employment can secure certain benefits to an employee, and may be an independent source that supports claims of entitlement to those benefits. *Perry v. Sindermann, supra.*

Whether the plaintiff's contract of employment engendered a legitimate claim of entitlement to continued employment as an assistant principal, as opposed to a mere unilateral expectation of it, is an issue which must be decided by reference to state law. *Bishop v. Wood, supra; United Steelworkers of America v. University of Alabama, supra; Johnson v. San Jacinto Junior College, supra.* The contract itself made no provision for any reassignment of the plaintiff during the period of its effectiveness.[4] The Board had promulgated no official policy with respect to midyear reassignments of administrative personnel, and there existed

---

**3.** Throughout the course of the proceedings, plaintiff objected to the Board's consideration of evidence relating to anything other than the several incidents originally proffered by Vollert to the plaintiff as the reasons for his dismissal. Plaintiff contended that the District's attorney had used the opportunity created by the postponement of the hearing to conduct extensive discovery and "manufacture" a series of charges which had not in fact informed the superintendent's recommendation to reassign the plaintiff. The Board, however, heard testimony as to many of the incidents listed in the

slate of charges prepared subsequent to the January 3 hearing date, and on the basis of the record before it, voted to affirm the superintendent's recommendation.

**4.** By contrast, the District's probationary teaching contract expressly provides that teachers may be reassigned from time to time as the District deems proper. The inclusion of this provision in one contract, and its exclusion from another, is not without significance in this case.

no district-wide practice from which such a policy could be inferred.[5] Under such circumstances, the plaintiff, citing *Board of Trustees of Crystal City Ind. Sch. Dist. v. Briggs*, 486 S.W.2d 829, 831–32 (Tex.Civ. App.—Beaumont 1972, no writ), contends that Texas contract law would support a legitimate claim of entitlement to continued employment in an administrative position. Further, the plaintiff argues that his midyear reassignment constituted a demotion under *Singleton v. Jackson Mun. Sep. Sch. Dist.*, 419 F.2d 1212 (5th Cir. 1969) *reversed on other grounds and remanded sub nom. Carter v. West Feliciana Sch. Board*, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970), *on remand*, 425 F.2d 1211 (5th Cir. 1970), and *Johnson v. San Jacinto Junior College, supra*, depriving him of a protected property interest created and secured by his contract of employment.

In *Singleton* the Fifth Circuit, faced with charges of racial discrimination in the context of desegregation-related reductions in school staff, held that any reassignment under which a staff member received less pay or had less responsibility than under the assignment he held previously, and which required a lesser degree of skills than did the assignment he held previously, constituted a demotion.[6] Subsequent opinions of that court have established that the central value sought to be protected under *Singleton* was responsibility; salary and title are not necessarily determinative of whether a reassignment is a demotion. *See, e. g., Lee v. Russell County Board of Education*, 563 F.2d 1159, 1161 (5th Cir. 1977).

Under circumstances similar to those in the case *sub judice*, District Judge Carl O. Bue held in *Johnson* that the midyear reassignment of an employee of the junior college from a position of registrar to a teaching position constituted a demotion under the *Singleton* standards, and that the demotion deprived the employee of a protected property interest in the position of registrar created by his contract of employment with the college. 498 F.Supp. at 567. As defined in *Singleton* and applied in the context of a due process claim in *Johnson*, plaintiff's reassignment in this case was clearly a demotion.

Defendants contend, however, that *Johnson* is inapplicable, and that only the benefit secured to the plaintiff under the instant contract which rises to the level of a protected property interest was his entitlement to the contractually stipulated compensation for the 1976–77 school year. Because the reassignment did not deny the plaintiff this entitlement, the defendants urge that his due process rights were not violated. The defendants cite the decision of the State Commissioner of Education in this case, *Manuel T. Thomas v. Galveston Ind. Sch. Dist.*, No. 77–R18 (Comm'r of Educ., Oct. 18, 1977), for the proposition that Section 23.26 of the Texas Education Code, which vests in the Board exclusive power to manage and to govern the public free schools of GISD, implicitly grants to the Board plenary authority to reassign school personnel regardless of whether a provision in an employment contract or the policies of the District so provides. This, the defendants argue, must necessarily defeat any property interest in continued employment which the plaintiff asserts under his contract with the District.

The defendants' argument is unpersuasive.[7] The mere existence of broad authori-

---

5. The law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be "implied." In determining whether the plaintiff's contract created a legitimate claim of entitlement as asserted, the contract must be construed in light of existing policies and practices of the District. *See Perry v. Sindermann, supra*, 408 U.S. at 602–03, 92 S.Ct. at 2700.

6. 419 F.2d at 1218. In the context of desegregation related reductions, the *Singleton* court held that school districts must develop objective and nondiscriminatory criterion prior to the demotion of any minority staff members. That aspect of *Singleton* is of no moment here. Refer to Part II.D., *infra*.

7. To the extent that the defendants argue generally that the only cognizable property interest accruing to a public employee from an employment contract is his salary, the argument is clearly untenable. Property interests created by contracts of public employment extend well

ty to reassign school personnel will not defeat an otherwise legitimate claim of entitlement to continued employment, where the exercise of such authority is left solely to the discretion of the school district and no provision is made for its exercise. For any number of reasons, a school board might chose not to wield this authority or might voluntarily place restrictions upon its exercise. In this case, the District entered into a contract of employment with the plaintiff which provided for his appointment as assistant principal at Austin Middle School for a period of not less than one school year, conditioning the plaintiff's employment solely upon adherence to the District rules and regulations and compliance with a standard of conduct embodied in the provisions of the contract. This contract on its face conferred upon plaintiff a legitimate claim of entitlement to his position as assistant principal at Austin Middle School during the term of the contract. The mere provision, without more, in the Texas Education Code that "[T]he Trustees shall have the exclusive power to manage and to govern the public free schools of the district," is insufficient under state law to transform plaintiff's otherwise legitimate claim of entitlement to employment in a stipulated position to an abstract and subjective expectation of it.

■ Because the defendants' actions in this case deprive plaintiff of a constitutionally protected property interest, he was entitled to procedural due process protection in conjunction with the deprivation, consisting of notice and the opportunity for some form of hearing. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725

(1975); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). The timing and content of the notice and hearing which are constitutionally required in a particular set of circumstances are determined by a balancing of individual and governmental interests, see *Morrissey v. Brewer, supra,* yet in the absence of some "extraordinary situations where valid governmental interest is at stake," *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), due process requires an opportunity for a hearing prior to the deprivation of any property interest. The Fifth Circuit has further established that the opportunity for some form of hearing must be provided prior to the nonrenewal of a public school employee if the decision deprives the employee of a protected liberty or property interest. *Gosney v. Sonora ISD,* 603 F.2d 522, 525 (5th Cir. 1979).

■ The minimum procedural requirements in the case *sub judice* have also been delineated by the Fifth Circuit in *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir. 1970). In *Ferguson* the court held that when a teacher who was to be terminated for cause opposes his termination:

(a) he [must] be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist;

(b) he [must] be advised of the names and the nature of the testimony of witnesses against him;

beyond narrow considerations of pecuniary benefits. "Property" denotes a broad range of interests secured by "existing rules or understandings," and a person's interest in a benefit is a property interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit. *Board of Regents v. Roth, supra,* 408 U.S. at 571–72, 577–78, 92 S.Ct. at 2706–2707, 2709–2710; *Perry v. Sindermann, supra,* 408 U.S. at 601, 92 S.Ct. at 2699.

Further, both defendants and the Commissioner apparently recognize that plaintiff had a

protected property interest in his salary as assistant principal for the 1976–77 year which he could not be deprived of without notice and opportunity for a hearing notwithstanding the "plenary" power of reassignment enjoyed by the Board under state law. *See Thomas v. GISD,* No. 77–R18, at 5–6. For due process purposes, no meaningful distinction exists between an individual's entitlement to employment in a stipulated position and his entitlement to compensation in that position such that the former would be obviated by Section 23.26 while the latter would not.

(c) at a reasonable time after such advice he must be accorded a meaningful opportunity to be heard in his own defense;

(d) that hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges.

*Id.* at 856. The minimum requirements set forth in *Ferguson* apply with equal force when a school administrator objects to his mid-year reassignment to a non-administrative position. *Johnson v. San Jacinto Junior College, supra,* at 568.

The plaintiff had a protected property interest in his employment as an assistant principal during the 1976–77 academic year; he, therefore, was constitutionally entitled to notice and to a pre-deprivation hearing in accordance with the requirements of *Ferguson v. Thomas.* The defendants, in demoting the plaintiff, deprived him of these procedural due process rights.

B. *Plaintiff's Post-Deprivation Procedural Due Process Claim*

The defendants did afford the plaintiff a hearing approximately one month after he was demoted. In the post-deprivation proceedings, plaintiff received written notice of the charges against him prior to the January 10 hearing. At that hearing, plaintiff was represented by an attorney who examined and cross-examined witnesses on his behalf, and the plaintiff was allowed to present his case orally. The defendants now urge that any pre-deprivation violations were cured by the subsequent public hearing before the Board. See *Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir. 1980); *Blair v. Robstown ISD,* 556 F.2d 1331, 1334–35 (5th Cir. 1977). The plaintiff contends that this post-deprivation hearing did not accord him due process under the standards outlined in *Ferguson v. Thomas, supra.* None of the errors of which he complains, however, rise to the level of a deprivation of due process.[8]

First, plaintiff complains that the notice of January 6 raised issues which the defendants did not consider, and issues which in fact were not known to the defendants, at the time the plaintiff was originally reassigned from his assistant principal's position. Essentially, plaintiff argues that the reasons for his demotion were "manufactured" after the fact, and that this amounts to a denial of due process.[9] The plaintiff relies upon the Fifth Circuit's opinion in *Roane v. Callisburg ISD,* 511 F.2d 633 (5th Cir. 1975). In *Roane* the plaintiff, a superintendent of the school district, was discharged from his position by the school board prior to the expiration of his contract of employment. The district court in *Roane* found that the school board had decided in late 1970 to terminate the plaintiff's employment after a dispute had arisen between the plaintiff and a majority of the board members over the construction and location of new classrooms within the

---

8. The plaintiff's arguments in the main concern the content, and not the timing, of the notice. *See* Plaintiff's Memorandum of Points and Authorities at 6–11. The plaintiff does not squarely raise the issue whether the notice afforded him sufficient time to prepare a response, and the Court at this late date, in view of the totality of circumstances and after review of the record of the hearing, cannot say as a matter of law that the notice was constitutionally insufficient in this regard.

9. The thrust of plaintiff's argument is that evidence relating to incidents of which he had no notice prior to January 6 should not have been made a part of the administrative record, and should not have been considered by the Board even if relevant to the Board's inquiry. It is a fair inference from the record that had the hearing been conducted on January 3, as originally scheduled, much of the evidence relating to the various incidents set forth in the January 6 letter would not have been presented for the Board's consideration. It further appears that the Board was not aware of many of these incidents when it initially approved the superintendent's recommendation that the plaintiff be reassigned, and there is no evidence that the superintendent, in recommending the plaintiff's reassignment, had in mind more than the two or three incidents which he discussed with the plaintiff on or about the time of the reassignment. The Board, however, determined to hear most of the evidence proffered, and it is an inescapable conclusion that the Board's decision was made upon the totality of this evidence.

district. Although the plaintiff's contract extended through June 30, 1972, the board in May 1971 adopted a motion terminating the plaintiff's services on June 30, 1971. Plaintiff received no hearing prior to such date, but two weeks later the board held a hearing at which it presented to the plaintiff for the first time a list of 14 reasons for his discharge. These reasons consisted primarily of a series of minor administrative deficiencies such as failure to secure needed repairs, delays in replacing school equipment and unauthorized transfer of students among schools. The trial court concluded from the record that the school board had presented the plaintiff with the belated list of incidents solely because the board realized that the difference of opinion over the location of new classrooms was not sufficient justification for discharge under its own regulations. See 511 F.2d at 636–37.

Affirming the decision of the district court in *Roane*, the Fifth Circuit noted that the determination of the school board, made in accordance with proper procedures and supported by substantial evidence, ordinarily is entitled to deference by a federal court in evaluating a claim of impermissible discharge. The court of appeals agreed with the trial court, however, that proper procedures were not observed, and that the *post hac* list of administrative deficiencies presented to the plaintiff was an effort to rationalize a decision stemming from differing views on classroom construction, which, as such, did not constitute "good cause" for the plaintiff's dismissal. *Id.* at 639.

In the instant case, the plaintiff initially was advised that he had been reassigned because of the cumulative effect of largely unspecified incidents relating to the handling of his administrative responsibilities as assistant principal, which in the opinion of defendant Vollert demonstrated that the plaintiff's performance of his duties was not in accordance with acceptable professional standards for the same or similar positions. The list of incidents provided to

the plaintiff on January 6, like the list in *Roane*, was clearly *post hac* in the sense that the plaintiff was not advised of these incidents until more than a month after his reassignment.[10] Unlike the plaintiff in *Roane*, however, the plaintiff here was advised of the incidents prior to the hearing, and, more important, the incidents set forth in the notice were relevant to the reason originally given for the plaintiff's reassignment. Hence, the plaintiff's reliance upon *Roane* is misplaced.

The objectionable feature in *Roane* was the school board's attempt to deprive a school administrator of an expectancy of continuing employment by mere ceremonial compliance with procedural due process, *see Ferguson v. Thomas, supra,* at 857. Federal courts cannot sanction ceremonial compliance with procedural requirements depriving an individual of the very protection against arbitrary action that due process is designed to safeguard. *See Burnaman v. Bay City ISD,* 445 F.Supp. 927, 931 (S.D. Tex.1978). This is not a case like *Roane,* whose record reflects mere pretextual compliance with due process requirements and a school board decision made on the basis of extraneous and impermissible considerations, and this Court cannot conclude that the actions complained of by the plaintiff rise to a level of a due process denial.

■ Additionally, the plaintiff contends that he was denied a hearing before an apparently impartial finder of fact as required by *Ferguson.* Under the District's policies, the plaintiff's reassignment required Board approval, and this initial action by the Board, the plaintiff asserts, impugned its impartiality as a constitutionally required finder of fact. The rudiments of due process in school administrative proceedings have been well outlined in this circuit, however, and this without more does not establish that the Board was a tribunal lacking "apparent impartiality toward the charges." *Ferguson v. Thomas,*

---

10. The plaintiff concedes that under *Ferguson* detailed charges were not required to be given at the outset, although the Court observes that under *Ferguson* the District should have come forth with its slate of incidents once the plaintiff had challenged his demotion.

*supra,* at 856. *See, e. g., Glenn v. Newman,* 614 F.2d 467, 473 (5th Cir. 1980).[11]

In sum, this Court finds that the post-deprivation notice and hearing afforded the plaintiff comport with the minimal procedural due process requirements outlined in *Ferguson v. Thomas.* The due process clause, as the Supreme Court explained in *Bishop v. Wood, supra,* 426 U.S. at 349–50, 96 S.Ct. at 2079–2080, is not a guarantee against incorrect or ill-advised personnel decisions made by public agencies. Federal Courts do not sit to judge the wisdom or compassion of agency decisions, but rather to guard against the possibility of arbitrary, undocumented action when protected rights are at stake by ensuring compliance with procedural safeguards. The determination of the Board in this case, made in accordance with proper procedures and supported by substantial evidence, passes constitutional muster.

C. *Plaintiff's Claimed Deprivation of a Liberty Interest*

The plaintiff asserts that the defendants deprived him of a liberty interest protected by the due process clause of the Fourteenth Amendment. Citing *Cooley v. Board of Education of Forrest City Sch. Dist.,* 453 F.2d 282, 286 (8th Cir. 1972), for the proposition that a midyear removal in and of itself is "awesome and potentially stigmatizing" and "one of the clearest instances" requiring due process "to interdict injurious and reckless government treatment," the plaintiff argues that his reassignment without warning in the middle of a school year, together with the requirement that he vacate his office immediately, seriously damaged his standing and associations in the community and imposed upon him a stigma that forecloses freedom to take advantage of other employment opportunities.

 *Cooley,* decided six months before the Supreme Court's landmark decision in

*Board of Regents v. Roth,* is not dispositive of the liberty issue at hand. In order to establish entitlement to due process protection in the context of a protectable liberty interest, the plaintiff must prove that in the course of his job reassignment the defendants prepared reports or made statements without giving him notice and an opportunity to be heard which were (a) false, (b) stigmatizing, and (c) published. *Huffstutler v. Bergland,* 607 F.2d 1090, 1092 (5th Cir. 1979). See *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood, supra; Board of Regents v. Roth, supra.*

 In this case it is clear that there was no public disclosure of the reasons for plaintiff's reassignment prior to the public hearing. In fact, the plaintiff contends that his midyear reassignment was stigmatizing for the precise reason that the defendants did not publicly disclose any reasons for the action. Yet, this amounts to little more than an argument that a midyear change in job classification, without more, offends due process. In *Board of Regents v. Roth, supra,* 408 U.S. at 575, 92 S.Ct. at 2708, the Supreme Court recognized that the non-retention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired on one job but remains as free as before to seek another."

This same conclusion applies to the reassignment of the plaintiff when the defendants made no public disclosure of the reasons for their action. In any event, due process requires only that an individual whose "good name, reputation, honor, or integrity" is impaired by governmental action be provided an opportunity for a hearing to clear his name. *Board of Regents v. Roth, supra,* at 573, 92 S.Ct. at 2707. That

---

11. There is unavoidable overlap between the plaintiff's objections to the Board's considerations of instances of which plaintiff had no notice prior to January 6 and his objections to the Board's impartiality. Because this Court

cannot say that the Board's consideration of such evidence was constitutionally offensive, however, the Board's capacity as an impartial fact finder is not called into question in this regard.

hearing was provided to the plaintiff in this case; thus, he was not deprived of his liberty without due process of law.

### D. Plaintiff's Equal Protection and Employment Discrimination Claims

Plaintiff contends that his demotion was motivated by racial discrimination, and asserts actions arising under 42 U.S.C. §§ 1981, 1983 and 2000e–5, *et seq.* In the context of the plaintiff's Title VII cause of action, this is a "disparate treatment" case. Thus, the plaintiff must prove that the defendant acted with unlawfully discriminatory purpose in bringing about his midyear demotion to a non-administrative position. *Teamsters v. United States,* 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854–1855 n.15, 52 L.Ed.2d 396 (1977). Plaintiff has the initial burden of demonstrating a prima facie case of discrimination. *Furnco Const. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If a prima facie case of discrimination is established, the burden of production shifts to the defendants to dispel any adverse inference by articulating "some legitimate, non-discriminatory reason" for their actions. *McDonnell Douglas v. Green, supra,* at 802, 93 S.Ct. at 1824. Plaintiff must then prove by a preponderance of the evidence that the defendants' articulated reasons were a pretext for discrimination, see *Furnco Const. v. Waters, supra,* and that the defendants acted with the requisite unlawful discriminatory purpose.

In *McDonnell Douglas,* the Supreme Court held that a Title VII complainant may establish a prima facie case of racial discrimination by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) after his rejection, the position remained open and the employer continued to seek applicants from persons of the complainant's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824. Factual settings

necessarily will vary in Title VII cases, and the prima facie standard set forth in *McDonnell Douglas* is not necessarily applicable in every respect to differing factual situations. *Id.* at 802 n.13, 93 S.Ct. at 1824 n.13. Nonetheless, *McDonnell Douglas* does make clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." *Furnco Const. v. Waters, supra,* 438 U.S. at 576, 98 S.Ct. at 2949.

In this case, the plaintiff has demonstrated that he is a member of a racial minority, and that he was removed from a position which was subsequently filled by the district with a member of another racial minority. He has presented evidence as to his qualifications for the position of assistant principal, the most forceful item being an evaluation of the plaintiff's job performance during the preceding school year, made by the principal of Austin Middle School, indicating that the plaintiff's performance of his duties was satisfactory.

The defendants, however, have met their burden of articulating some legitimate, non-discriminatory reasons for the plaintiff's reassignment, and the plaintiff has failed to prove by a preponderance of the evidence that the defendants' articulated reasons were mere pretexts for discrimination, and that the defendants acted with the requisite unlawful discriminatory purpose in reassigning the plaintiff. Thus, plaintiff has failed to establish his Title VII case. Because the plaintiff's section 1981 and section 1983 actions also require him to prove by a preponderance of the evidence that the defendants actions were motivated by an impermissible discriminatory purpose, *see, e. g., Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), the plaintiff has failed to show under these statutes, or under the Constitution of the United States, that his reassignment was the result of any invidious racial discrimination by the defendants.

■ The plaintiff also contends that his equal protection rights were violated because the defendants demoted him without first developing objective and non-discriminatory criteria for the reassignment of administrative personnel in accordance with *Singleton v. Jackson Mun. Sep. Sch. Dist., supra.* In *Singleton,* the Fifth Circuit sought to cope with the consequences of a previous order that segregated school systems be dismantled immediately. The Court realized at the time of its decision that achievement of a unitary school system often resulted in elimination of duplicative jobs needed only so long as the local authorities maintained a wasteful and unlawful dual educational system. In order to prevent the hardship caused by the loss of these superfluous jobs from falling disproportionately on black teachers and administrators, the Fifth Circuit established specific criteria to govern reductions occurring from conversion from a dual to a unitary school system.

The strict requirements of *Singleton* however, are inapplicable in the absence of desegregation related reductions. *Pickens v. Okolona Mun. Sep. Sch. Dist.,* 527 F.2d 358, 361 (5th Cir. 1976); *see also, Lee v. Russell County Board of Education,* 563 F.2d 1159, 1162 (5th Cir. 1977) (*Singleton* inapplicable where demotion not directly caused by desegregation process). Desegregation related reductions are not involved in the instant case; moreover, the dismissal or reassignment of an individual administrator or teacher does not create a *Singleton* reduction where, as here, the absolute number of available positions remains the same or increases. *Pickens v. Okolona Mun. Sep. Sch. Dist., supra,* at 362.

### III.

### IMMUNITY

■ The defendants in this action are the Board of Trustees of Galveston Independent School District, and Frank J. Vollert, Superintendent of the District. The individual members of the school board have not been sued in their individual capacities; rather, the defendant Board is sued as a "body corporate of elected public officials." The Board clearly is a "person" amenable to suit under section 1983. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Kingsville ISD v. Cooper,* 611 F.2d 1109, 1112 (5th Cir. 1980). Because a suit against the Board in its official capacity is, in essence, one against the school district, the Board may not assert the qualified immunity extended to its individual members in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *See Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Familias Unidas v. Briscoe,* 619 F.2d 391, 430 & n.12 (5th Cir. 1980); *Hander v. San Jacinto Junior College,* 519 F.2d 273, 277 n.1 (5th Cir. 1975). *See also Rodriguez v. Board of Education of Eastchester Union Free Sch. Dist.,* 620 F.2d 362, 366 (2nd Cir. 1980).

■ Under *Monell,* monetary damages may be assessed against the Board in its official capacity only if "the action that is alleged to be unconstitutional implements or executed a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035.[12] The defendants' argument in this case that the actions complained of do not fall within the parameters of liability established in *Monell* is patently without merit. School district personnel decisions by the body entrusted with such decisions are "officially adopted and promulgated." *Moore v. Tangipahoa Parish Sch. Board,* 594 F.2d 489, 493 (5th Cir. 1979). Thus, the defendant Board is liable for damages sustained by the plaintiff as a proximate cause of pre-deprivation due process denials.

---

12. Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent, *Monell v. Dept. of Social Services, supra,* 436 U.S. at 690 n.55, 98 S.Ct. at 2035 n.55; *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Thus, damages may be awarded against a defendant in his official capacity if they would be available against the governmental entity itself under *Monell. Familias Unidas v. Briscoe, supra,* at 403.

The defendant Vollert, in his official capacity, is also liable in damages to the plaintiff for his actions implementing the personnel decision officially adopted and promulgated by the Board. *Monell, supra,* at 690, 98 S.Ct. at 2035. Vollert contends that he has not been sued in an individual capacity and hence is not personally liable in damages. Alternatively, Vollert asserts the so-called "good faith" immunity of *Wood v. Strickland, supra,* as a defense to personal liability. After examining the pleadings, the Court is of the opinion that a cause of action has been stated against Vollert in both his official and individual capacities,[13] and, accordingly, the Court considers Vollert's claim of qualified, good faith immunity.

In the context of a section 1983 action, qualified immunity is a defense and the burden of pleading it rests with the defendant. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Under the two-pronged standard articulated in *Wood v. Strickland,* an individual defendant in a section 1983 action is entitled to qualified immunity provided that he acted without the malicious intention to cause a deprivation of constitutional rights or other injury, and without such disregard of the plaintiff's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. *See also Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859–860, 55 L.Ed.2d 24 (1978). With respect to the first of these factors, the good faith defense is not available if the defendant actually intended to do harm to the plaintiff, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. *See Bogard v. Cook,* 586 F.2d 399, 412 (5th Cir. 1978). The Court concludes that Vollert did not act with deliberate intent to harm the plaintiff, and that any injury resulting to plaintiff from the pre-deprivation denial of due process was not so substantially certain to result as to charge Vollert's action with the constructive equivalent of intent to harm.

With regard to the actual deprivation of the plaintiff's constitutional rights, however, the Court concludes that Vollert should have known of the plaintiff's rights at the time the initial determination to demote him without notice and prior opportunity for a hearing was made. Although the defendant is not "charged with predicting the future course of constitutional law," *Wood v. Strickland, supra,* 420 U.S. at 322, 95 S.Ct. at 1001, an act violating constitutional rights may not be "justified by ignorance or disregard of settled, indisputable law on the part of one . . . who has voluntarily undertaken the task of supervising the operation of the school . . ." *Id.* at 321–22, 95 S.Ct. at 1000. The plaintiff's right to notice and the opportunity for a hearing prior to any official action depriving him of a protected property interest was clearly established at the time of his demotion. Accordingly the Court finds that Vollert did not have an objectively reasonable basis for the belief that his actions did not violate the plaintiff's constitutional rights, and is not entitled to assert the good faith defense.

## IV.

## REMEDIAL ASPECTS

As set forth above, this Court finds that the plaintiff had a legitimate claim of entitlement to continued employment as an assistant principal throughout the term of his contract of employment with the District, and that the midterm demotion of the plaintiff without notice and a prior opportunity for a hearing deprived the plaintiff of a protected property interest without due

13. The lawsuit, as styled, is brought against "Frank J. Vollert, Superintendent of the Galveston Independent School District." This intimates that the action is against Vollert in both his individual and official capacities. Further, plaintiff asserts actions against Vollert for which official liability would lie, *i. e.,* actions for which the District would be liable in damages, as well as actions which, fairly construed, could only be maintained against Vollert in his individual capacity.

process of law. The pre-deprivation procedures afforded the plaintiff did not conform with even the most basic of constitutional due process requirements.

Nevertheless, any error involved in the pre-deprivation denial was cured in the subsequent public hearing before the Board. *See Thompson v. Bass,* 616 F.2d 1259, 1266 (5th Cir. 1980); *Glenn v. Newman, supra* at 472. *See also, Blair v. Robstown ISD, supra,* at 1334, 1335. The post-deprivation hearing fully comported with the due process standards outlined in *Ferguson v. Thomas,* and none of the errors of which the plaintiff complains in connection with the post-deprivation proceedings rise to the level of a deprivation of due process. *See Thompson v. Bass, supra,* at 1266.

Thus, plaintiff is not entitled to reinstatement to the position of assistant principal at Austin Middle School. Plaintiff's property interest in continued employment was created by his contract of employment, and could in no event extend beyond the term of that contract. Moreover, his demotion from that position was reaffirmed in a due process hearing before the expiration of the contractual term. *See Johnson v. San Jacinto Jr. College, supra.* The plaintiff is entitled, however, to recover actual damages which are proven to have been proximately caused by the pre-deprivation due process denial, and to recover nominal damages not in excess of $1. *Carey v. Piphus,* 435 U.S. 247, 262–67, 98 S.Ct. 1042, 1051–1054, 55 L.Ed.2d 252 (1978); *Familias Unidas v. Briscoe, supra,* at 402. The plaintiff has failed to establish his entitlement to punitive damages and, accordingly, this claim for relief is denied. Because the plaintiff has prevailed in part on the merits of his section 1983 claim, he is further entitled to an award of attorneys fees pursuant to 42 U.S.C. § 1988. The amount of attorneys fees is to be ascertained pursuant to the guidelines provided in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir. 1974), and should be based only upon the work performed on issues where the plaintiff was successful. *Familias Unidas v. Briscoe, supra,* at 406.

## V.

## CONCLUSION

In summary, the Court reiterates that the defendants' liability is limited solely to the pre-deprivation denial of procedural due process itself. This Court has not concluded that the plaintiff's reassignment was unjustified; rather, it has found the deprivation of the protected interest in this case to be substantially justified but the attendant pre-deprivation procedures constitutionally deficient. Injury caused by a justified deprivation is not properly compensable under section 1983, nor are damages presumed from a denial of due process. Except for any nominal award, the only damages recoverable by the plaintiff in this instance are those that are actually proven to have been caused by the denial of procedural due process itself. *Carey v. Piphus, supra,* 435 U.S. at 262–63, 98 S.Ct. at 1051–1052. The plaintiff's recovery of damages and attorneys fees shall be against the defendant Board of Trustees in its official capacity and against the defendant Vollert in both his official and individual capacities.

The Court will afford the parties a reasonable time in which to confer in a good faith effort to reach agreement upon an award of damages consistent with the Court's findings herein, as well as an award of attorneys fees in consonance with the guidelines provided by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, supra.* If within 20 days after the date of entry of this Memorandum and Order the parties cannot reach agreement, they will notify the Clerk of the Court in writing, so that an evidentiary hearing on damages and attorneys fees may be scheduled as soon as the Court's docket permits.

It is so ORDERED.